**Richard K. WOLFF, Plaintiff–Appellee,**

v.

**Thomas E. MOORE (98–4089); Sanford Whitlow (98–4080), Defendants–Appellants.**

**Nos. 96–4080, 96–4089.**

United States Court of Appeals, Sixth Circuit.

Argued: Nov. 1, 1999

Decided and Filed: Dec. 9, 1999

---

**326**

Paul M. Laufman (argued and briefed), Robert F. Laufman (briefed), Laufman, Rauh & Gerhardstein, Cincinnati, Ohio, for Plaintiff–Appellee.

Todd R. Marti (argued and briefed), Office of the Attorney General, Corrections Litigation Section, Columbus, Ohio, for Defendants–Appellants in 98–4080.

Thomas R. Smith (briefed), Haverkamp, Brinker, Rebold & Riehl, Cincinnati, Ohio, for Defendants–Appellants in 98–4089.

Before: MERRITT and NELSON, Circuit Judges; OLIVER,[*] District Judge.

MERRITT, Circuit Judge.

Plaintiff Richard Wolff, an inmate formerly incarcerated at the Lebanon Correctional Institution, brought an action pursuant to 42 U.S.C. § 1983 against current corrections officer Sanford Whitlow and former corrections officer Thomas E. Moore in their individual capacities, alleging a violation of his Eighth Amendment rights under the United States Constitution. Specifically, Wolff alleged that former Officer Moore used excessive force against him, and that Officer Whitlow conspired and assisted former Officer Moore in using that force. The case was assigned to a magistrate judge, who held prior to trial that Wolff's Eighth Amendment claims were not subject to the administrative exhaustion requirement of the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a), because they did not involve "prison conditions" within the meaning of the statute.[1] Following a trial conducted by the magistrate judge, the jury returned a verdict against both defendants, finding that former Officer Moore used excessive force against Wolff, and that Officer Whitlow was deliberately indifferent to Wolff's safety.[2] Furthermore, the magistrate judge denied Officer Whitlow's subsequent motion for relief from judgment, finding that Wolff had in fact exhausted his admin-

---

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

1. Section 1997e(a), as amended, provides:

 No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

2. The jury found that defendants Moore and Whitlow were jointly and severally liable in the amount of $8,250.00 in compensatory damages, that Moore was individually liable in the amount of $45,000.00 punitive damages, and that Whitlow was individually liable in the amount of $30,000 punitive damages.

istrative remedies, even though his claims were not subject to this requirement.[3]

It is undisputed that inmate Wolff was physically assaulted in his cell by Officer Moore on the night of October 15, 1995, having been beaten about the face and suffering a broken nose. At trial, Officer Moore admitted to beating Wolff, as well as testified that Officer Whitlow had aided in the planning and commission of the assault. Whitlow denied, and continues to deny, any involvement in or knowledge of the beating. Both former Officer Moore and Officer Whitlow contend, however, that Wolff's Eighth Amendment claims against them involve "prison conditions," within the meaning of the Reform Act, and that Wolff was not only required to exhaust his administrative remedies prior to bringing his § 1983 claim, but that he failed to do so. Officer Whitlow further argues that the magistrate judge erred when he admitted testimony that a witness for the plaintiff had agreed to take a polygraph test.

■ We have recently held in *Freeman v. Francis* that the term "prison conditions" as used in § 1997e(a) includes claims of excessive force, thereby subjecting Wolff's claim to the administrative exhaustion requirement. 196 F.3d at 643. As a result, the magistrate judge erred when he held that any failure by Wolff to exhaust his prison administrative remedies did not bar his federal action. Despite this error, however, the magistrate judge's ultimate ruling should stand because he correctly held that, in fact, Wolff had exhausted his administrative remedies prior to filing his federal complaint.

**3.** Wolff also argues in his reply brief that exhaustion of the grievance procedure is not required because he seeks money damages, and that such a remedy is not available for excessive force under the Ohio administrative process. A panel of this Court recently held, however, that administrative exhaustion is required so long as the prison system has an administrative process that will review a prisoner's complaint, despite the fact that the damages remedy sought is not an available remedy. See *Freeman v. Francis*, 196 F.3d

■ The plain language of the Reform Act makes exhaustion a precondition to filing an action in federal court under the statute. See *id.* at 645; *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.1998), *cert. denied*, — U.S. ——, 119 S.Ct. 88, 142 L.Ed.2d 69 (1998). When the claim in question arises before the effective date of the Reform Act, but the complaint is filed afterwards, the application of this precondition is satisfied where, as here, there has been substantial compliance with the applicable administrative process. See *Wyatt*, 193 F.3d at 877; *see also Freeman*, 196 F.3d at 645 (indicating that questions of fairness arise when the event giving rise to the claim occurred before passage of the Act). Where an event occurs before the administrative exhaustion requirement of the Reform Act took effect, it is necessary to look at how effective the prisoner's complaint was in providing notice.

■ In this case, Wolff was assaulted in October 1995, well before the April 1996 amendment requiring administrative exhaustion. As the magistrate judge held, Wolff's failure to file a *formal* grievance against the defendants pursuant to the standard inmate grievance procedure set forth in OHIO ADMIN. CODE § 5120–9–31, did not merit a dismissal of his federal claim. Wolff satisfied the administrative exhaustion requirement in this particular case by participating in the investigations into Officer Moore's actions conducted pursuant to the use of force procedure set forth in OHIO ADMIN. CODE §§ 5120–9–01 through 5120–9–03.[4]

641 (6th Cir.1999); *Wyatt v. Leonard*, 193 F.3d 876 (6th Cir.1999).

**4.** Although the use of force procedure under OHIO ADMIN. CODE §§ 5120–9–01 through 5120–9–03 is generally an employee-initiated procedure, and OHIO ADMIN. CODE § 5120–9–31 sets forth the standard inmate-initiated grievance procedure, the use of force procedure may be inmate-initiated when no Use of Force Report has been made by a corrections official after an alleged physical altercation. As the record indicates, neither former Officer

In response to Wolff's complaint, the Ohio State Highway Patrol and the institutional and chief inspectors of the Ohio Department of Rehabilitation and Correction were both immediately notified and made aware of the facts surrounding Wolff's claim. In addition to an extensive Ohio State Highway Patrol investigation, two internal Use of Force Committees investigated the incident. Then the warden, upon disagreeing with the findings of the two internal Use of Force committees, requested that the chief inspector appoint a third, independent investigating committee. This third committee ultimately concluded that former Officer Moore had in fact assaulted Wolff in violation of his Eighth Amendment rights, resulting in Moore's discharge. Clearly, in this case Wolff substantially complied with the prison grievance process at the time of the alleged wrong as to his claim against former Officer Moore by cooperating with these four investigations. Essentially the same process would have occurred had Wolff filed a formal grievance under OHIO ADMIN. CODE § 5120-9-31 as would have occurred under OHIO ADMIN. CODE §§ 5120-9-01 through 5120-9-03.[5]

 In contrast to the claim against former Officer Moore, Officer Whitlow argues that Wolff failed to exhaust his administrative remedies on his claim against Whitlow because Wolff never directly implicated Whitlow in the assault when he complained to prison officials and because Wolff only complained of a direct assault to his person, not that third party prison personnel unreasonably failed to protect him from the beating. Officer Whitlow also argues that the general grievance procedure set forth under OHIO ADMIN. CODE § 5120-9-31, and not OHIO ADMIN. CODE §§ 5120-9-01 through 5120-9-03, is the only appropriate grievance mechanism available for a failure to protect claim.

As the magistrate judge noted, two inmate witness statements implicating Officer Whitlow in the assault were made known to the institutional inspector, the three Use of Force committees, and the Ohio State Highway Patrol. As counsel for Officer Whitlow now concedes, the record clearly indicates that the Ohio State Highway Patrol and officials conducting the prison grievance process had information implicating Whitlow in their investigations. They merely chose not to act on it. As a result, prison officials were effectively on notice from the beginning of the process of Officer Whitlow's possible role in the beating. *See Freeman*, 196 F.3d at 644 (indicating that administrative exhaustion serves to alert prison officials to problems concerning prison life so that they may immediately take appropriate action).

Although we recently held in *Freeman v. Francis* that investigations conducted by

Moore nor Officer Whitlow filed a Use of Force Report after the assault and Wolff promptly reported the incident to an appropriate prison official, thereby instigating the commencement of the use of force internal investigation. Furthermore, there is evidence in the record that an inmate may be precluded from bringing a complaint under OHIO ADMIN. CODE § 5120-9-31 once a use of force investigation has commenced under OHIO ADMIN. CODE §§ 5120-9-01 through 5120-9-03. As a result, it seems that Wolff utilized the grievance procedure available to him.

5. Briefly, under OHIO ADMIN. CODE § 5120-9-31, the formal inmate-initiated grievance procedure provides for notification in person or in writing of the appropriate prison official whose area of responsibility is related to the grievance. OHIO ADMIN. CODE § 5120-9-31(F).

If this does not provide satisfactory results, the grievance procedure provides for notification of the grievance to the institutional inspector, OHIO ADMIN. CODE § 5120-9-31(F), an investigation by the institutional inspector, OHIO ADMIN. CODE § 5120-9-31(H)(4), and an appeal to the chief inspector of the Ohio Department of Rehabilitation and Correction. OHIO ADMIN. CODE § 5120-9-31(H)(8). *See, also, Freeman*, 196 F.3d at 645 n. 4, for a more detailed discussion of the grievance procedure under OHIO ADMIN. CODE § 5120-9-31. The Ohio Attorney General's Office concedes that Wolff satisfied § 1997e(a) as to the claim against former Officer Moore (although the State does not represent former Officer Moore and only represents Officer Whitlow in this appeal).

the Ohio State Highway Patrol and a use of force committee were insufficient to exhaust a prisoner's administrative remedies under the Reform Act, 196 F.3d at 644, the matter at hand is factually distinguishable from *Freeman*. First, *Freeman* did not involve a question of substantial compliance, as it does here, because the events in *Freeman* giving rise to the inmate's claim occurred after the passage of the Reform Act. *Id.* at 645. Second, the inmate in *Freeman* filed his federal claim before allowing the administrative process to be completed, in contrast to the finalized administrative process in this case. *Id.* Moreover, the use of force investigation in this case was initiated after Wolff himself complained of the assault, while there was no indication in the *Freeman* record reflecting how the assault was brought to the attention of prison officials. *Id.* at 644. Accordingly, Wolff's complaint instigating the use of force investigations, coupled with the fact that the investigators were on notice of Officer Whitlow's potential involvement, substantially complied with the Reform Act's requirements and was sufficient, in this case, to exhaust Wolff's claim against Officer Whitlow.

■ The magistrate judge correctly recognized that Wolff's failure to protect claim against Officer Whitlow was, on the facts, "closely intertwined with [the] excessive force claim" against former Officer Moore and "arose in the context of" that claim. Accordingly, under these circumstances, Wolff's failure to protect claim against Officer Whitlow is not so distinct from the assault claim against former Officer Moore as to require the filing of a separate and independent administrative grievance. It would be redundant and unnecessary to require Wolff to file a new complaint under OHIO ADMIN. CODE § 5120–9–31.

■ We now turn to Officer Whitlow's argument that the magistrate judge erred when he admitted testimony that an inmate witness for the plaintiff, who had allegedly observed Officer Whitlow outside Wolff's prison cell at the time of the as-

sault, had agreed to take a polygraph test. Although it was error to admit the testimony under the standard set forth by this court in *Wolfel v. Holbrook*, 823 F.2d 970, 972 (6th Cir.1987), because it was not relevant to the proof developed by the probative evidence, there was no unfair prejudice to Officer Whitlow. The credibility and veracity of the witness testimony implicating Officer Whitlow was not significantly enhanced by the reference to the possibility of a polygraph exam because the testimony at issue was fully corroborated by the statements given by former Officer Moore, Wolff, and inmate Crawford. Furthermore, there was considerable evidence, including statements made by Officer Whitlow himself, that the assault could not have occurred without, at a minimum, Officer Whitlow being put on notice that something was awry. Rule 61 of the FEDERAL RULES OF CIVIL PROCEDURE requires us on appeal to "disregard any error ... which does not affect the substantial rights" of a party and this is such an error.

Accordingly, we affirm the decision of the magistrate judge, but for the differing reasons set forth above.