Richard K. WOLFF, Plaintiff,

v.

Thomas E. MOORE, et al., Defendants.

No. C–1–96–708.

United States District Court,
S.D. Ohio,
Western Division.

July 7, 2000.

Robert Franklin Laufman, Paul Montague Laufman, Laufman & Gerhardstein, Cincinnati, OH, for Richard K Wolff, plaintiff.

Thomas Russell Smith, Bunke Henkel Haverkamp Smith & Riehl 1, Cincinnati, OH, for Thomas E Moore, defendant.

Carol Anne Hamilton O'Brien, Brian M Zets, Ohio Attorney General 2, Columbus, OH, for Sanford Whitlow, Raymond Fugate, defendants.

William R Kirschner, U.S. Department of Justice, Civil Division/Federal Programs Branch, Washington, DC, Sharon Janine Zealey, United States Attorney's Office, Cincinnati, OH, for USA, movant.

## ORDER

HOGAN, United States Magistrate Judge.

This matter is before the Court on plaintiff's motion for award of attorneys' fees and costs. (Doc. 96).

Plaintiff is a former inmate at the Lebanon Correctional Institution (LeCI). On July 22, 1996, plaintiff, through counsel, filed this action pursuant to 42 U.S.C. § 1983 alleging a violation of his Eighth Amendment rights under the United States Constitution. The original complaint named Thomas E. Moore, a former corrections officer at LeCI, as the defendant. (Doc. 1). Plaintiff alleged that on October 15, 1995, defendant Moore used excessive force against him, resulting in a broken nose, swelling of both eyes, and other facial injuries. On April 28, 1997, plaintiff amended the complaint to add corrections officers Sanford Whitlow and Raymond Fugate as defendants in this matter. (Doc. 11). Plaintiff alleged that defendants Whitlow and Fugate conspired with Officer Moore to use excessive force against plaintiff. Plaintiff also alleged that defendant Whitlow was deliberately indifferent to plaintiff's safety during the commission of the use of excessive force by defendant Moore.

On July 2, 1998, defendants moved to dismiss this action for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), contending that plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 (PLRA), Pub.L. No. 104–134, 110 Stat. 1321, and that such failure divested this Court of jurisdiction over this matter. (Docs.29, 30). Plaintiff also moved for partial summary judgment on the issue of exhaustion of administrative remedies. (Doc. 35). Prior to a ruling on these motions, defendant Fugate was dismissed as a defendant.

On July 31, 1998, the Court denied plaintiff's and defendants' motions. (Doc. 47). The Court held that claims of excessive use of force are not "prison conditions" within the meaning of 42 U.S.C. § 1997e(a) and therefore not subject to the administrative exhaustion requirement. (Doc. 47 at 9).

On August 7, 1998, after a five day jury trial, a verdict was returned for plaintiff against defendant Moore on the Eighth Amendment excessive force claim in the amount of $8,250 in compensatory damages and $45,000 in punitive damages. A verdict was returned for plaintiff against defendant Whitlow on the Eighth Amendment deliberate indifference claim in the amount of $30,000 in punitive damages. (Doc. 59). The Court subsequently granted motions to alter or amend the judgment to reflect that the jury award of $8,250 in compensatory damages is joint and several against both defendants Moore and Whitlow. (Doc. 72).

Plaintiff then moved for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988 against defendants Moore and Whitlow. (Doc. 71). The Court found that plaintiff is a prevailing party within the meaning of § 1988, *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Northcross v. Bd. Of Ed. Of Memphis City Schools,* 611 F.2d 624, 633 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980), and granted plaintiff's motion for attorneys' fees. (Doc. 81). However, pursuant to 42 U.S.C. § 1997e(d)(2), the Court offset the amount of attorneys' fees to be paid by defendants by 25 percent of the damage award to plaintiff. Plaintiff was awarded $48,406.50 for attorneys' fees and $2,956.90 in costs for a total award of $51,363.40. The Court ordered that $20,812.50 of the damages award to plaintiff be applied toward satisfying the $51,363.40 attorneys' fees awarded against defendants. Defendants were ordered to pay counsel for plaintiff $30,550.90 in attorneys' fees and expenses, to be awarded jointly and severally against both defendants. (Doc. 81 at 3).

Thereafter, defendant Whitlow moved for relief from judgment, arguing that the Court incorrectly determined that claims of excessive use of force are not "prison conditions" under 42 U.S.C. § 1997e(a) and therefore not subject to the PLRA exhaustion requirement. Whitlow also argued that plaintiff failed to exhaust his administrative remedies with respect to his deliberate indifference claim against Whitlow justifying relief from judgment. This motion was denied by Order of December 17, 1998. (Doc. 82).

Defendants appealed the Court's decisions on exhaustion of administrative remedies and ruling on an evidentiary issue concerning polygraph testimony at the trial. The Sixth Circuit Court of Appeals found that claims of excessive force are "prison conditions" subject to the PLRA exhaustion requirement found in 42 U.S.C. § 1997e(a). *See Freeman v. Francis,* 196 F.3d 641 (6th Cir.1999). However, the Court of Appeals affirmed the District Court's finding that plaintiff nevertheless exhausted his administrative remedies in this case. In addition, the Sixth Circuit found that the District Court erred in permitting testimony concerning a witness's willingness to take a polygraph examination. However, the Court of Appeals found such error to be harmless and affirmed the judgment of the District Court. (Doc. 94).

On January 18, 2000, plaintiff moved for an award of attorneys' fees and costs for post trial and appellate work on this action. (Doc. 96). In the memorandum in support of the motion, plaintiff argued that the limitation on the hourly rate for attorney's fees imposed by the PLRA is unconstitutional. Pursuant to 28 U.S.C. § 2403(a) and Fed.R.Civ.P. 24(c), the Court certified to the United States Attorney General that the constitutionality of the attorney's fees provision of the PLRA set forth in 42 U.S.C. § 1997e(d)(3) has been drawn into question in this case and invited the United States to intervene. (Doc. 100). The Court subsequently granted the motion of the United States to intervene in this matter. (Doc. 107).

On June 8, 2000, the Court heard oral argument from the parties and intervenor on the motion for attorneys' fees.

This matter is before the Court on the motion for attorneys' fees and costs (Doc. 96), the memorandum in support of the motion (Doc. 97), defendants' memorandum in opposition to the motion for attorneys' fees (Doc. 98), the United States' memorandum of law concerning the challenged provisions of the PLRA (Doc. 103), defendants' supplemental memoranda in opposition to the motion for attorneys' fees (Docs.104, 105), and plaintiff's reply memorandum. (Doc. 106).

## I. The Prison Litigation Reform Act's Limitation on Attorney's Fees Violates Plaintiff's Right to Equal Protection.

Sections 803(d) of the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321–66, amended the provisions for awarding attorney's fees to successful prisoner civil rights plaintiffs. *See* 42 U.S.C. § 1997e(d). Section 1997e(d) provides:

(d) Attorney's Fees

(1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under [42 U.S.C. § 1988], such fees shall not be awarded, except to the extent that—

   (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under [42 U.S.C. § 1988]; and

   (B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or

   (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

(2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant. (3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, [the Criminal Justice Act,] for payment of court-appointed counsel. . . .

At issue in this case is section 1997e(d)(3) which limits the hourly rate for attorney's fees in successful prisoner civil rights cases to 150% of the hourly rate set forth in 18 U.S.C. § 3006A(d)(1), or $112.50 per hour.[1] Plaintiff contends that the fee cap set forth in § 1997e(d)(3) violates the equal protection component of the Due Process Clause of the Fifth Amendment to the United States Constitution.[2] Defendants and the United States argue that the fee cap is rationally related to legitimate governmental interest and withstands equal protection scrutiny.

■■■ Because an enactment of the federal government is at issue, the equal protection principles of the Fifth Amendment's Due Process Clause apply in this case. Federal legislation must meet the same equal protection standards applicable to the states set forth in the Fourteenth Amendment. *Mathews v. de Castro*, 429 U.S. 181, 182 n. 1, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976). *See also Weinberger v. Salfi*, 422 U.S. 749, 768–770, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). At the heart of equal protection is the principle that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87

---

1. Section 3006A(d)(1) sets the maximum hourly rate at $75. 150% of 75 is $112.50.

2. The fee shifting provision set forth in section 1997e(d)(2) is not at issue in this case since plaintiff's request for attorneys' fees does not exceed the 150% limitation of § 1997e(d)(2). The Court has already applied the 25% fee shifting provision set forth in the first sentence of section 1997e(d)(2). (See Doc. 81).

L.Ed.2d 313 (1985). Classifications implicating a suspect class, such as race, or burdening a fundamental right are subject to a strict scrutiny analysis. *Id.* at 440, 105 S.Ct. 3249. *See also Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). Classifications which burden neither a fundamental right nor target a suspect class will be upheld so long as they bear a rational relationship to a legitimate objective. *Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996); *Heller v. Doe,* 509 U.S. 312, 319–320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993).

The classification drawn by the attorney's fees provision at issue here is between successful prisoner civil rights litigants and successful non-prisoner civil rights litigants. Sections 1997e(d)(3) limits the recovery of attorney's fees to those representing prisoners in civil rights actions, while fees to attorneys representing non-prisoners are not so limited.

■ To the extent that plaintiff argues that a prisoner's right of access to the courts is implicated by the limitation on attorney's fees and that strict scrutiny analysis applies (Doc. 97 at 6), the Court disagrees. The right of access to the courts is fundamental. *Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith,* 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Wilson v. Yaklich,* 148 F.3d 596, 605 (6th Cir.1998), *cert. denied,* 525 U.S. 1139, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999). Inmates must be given "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis,* 518 U.S. at 351, 116 S.Ct. 2174, quoting *Bounds,* 430 U.S. at 825, 97 S.Ct. 1491. The PLRA fee cap in this case does not deny inmates access to the courts because the cap does not prohibit inmates from filing and prosecuting their cases, the essence of this right. 518 U.S. at 351–53, 116 S.Ct. 2174. So long as inmates are given the opportunity to submit their grievances to the courts, the right of access to the courts is fulfilled. *Id.* at 360, 116 S.Ct. 2174. This right does not include the ability "to litigate effectively once in court." 518 U.S. at 354, 116 S.Ct. 2174. Although the hourly rate fee cap of § 1997e(d)(3) may inhibit an inmate's ability to secure representation by private counsel, it does not deny prisoners the fundamental right of access to the courts.[3]

■ The question now becomes whether the distinction between successful prisoner civil rights litigants and non-prisoner civil rights litigants drawn by the PLRA fee cap in section 1997e(d)(3) is rationally related to a legitimate governmental interest. *Romer,* 517 U.S. at 631, 116 S.Ct. 1620. *See also Hampton v. Hobbs,* 106 F.3d 1281, 1287 (6th Cir.1997), citing *United States v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Section 1997e(d)(3) is entitled to a presumption of constitutionality, *see Heller,* 509 U.S. at 319, 113 S.Ct. 2637; *City of Cleburne,* 473 U.S. at 440, 105 S.Ct. 3249, and must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller,* 509 U.S. at 320, 113 S.Ct. 2637, quoting *F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). *See also Sullivan v. Stroop,* 496 U.S. 478, 485, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990). The distinction drawn must "have some relevance to the purpose for which the classification is made." *Rinaldi v. Yeager,* 384 U.S. 305, 309, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966) (citations and internal quotations omitted). However, where a classification "whose re-

---

**3.** Plaintiff does not contend that inmates are a suspect class. In any event, it is well settled that prisoners are not a suspect class which would require strict scrutiny review. *See Wil-*

*son v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998), *cert. denied,* 525 U.S. 1139, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999); *Hampton v. Hobbs,* 106 F.3d 1281, 1286 (6th Cir.1997).

lationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational," the rational relationship standard is not satisfied. *City of Cleburne,* 473 U.S. at 446, 105 S.Ct. 3249, citing *Zobel v. Williams,* 457 U.S. 55, 61–63, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982); *United States Dept. of Agriculture v. Moreno,* 413 U.S. 528, 535, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973).

The United States argues that the distinction drawn between successful prisoner civil rights litigants and successful nonprisoner civil rights litigants in the PLRA attorney's fee provision creates an economic disincentive for prisoners to file frivolous lawsuits. This Court has previously recognized that one of the primary purposes in Congress's passage of the PLRA was to reduce the number of frivolous prisoner lawsuits in the federal courts. (Doc. 47 at 3). *See Hadix v. Johnson,* 143 F.3d 246, 250 (6th Cir.1998). Undoubtedly, as plaintiff admits, this goal is a legitimate one. *See Wilson,* 148 F.3d at 604. Nevertheless, the Court fails to find a rational connection between the goal of reducing frivolous prisoner lawsuits and the limitation on attorney's fees to successful prisoner plaintiffs.

Relying on *Madrid v. Gomez,* 190 F.3d 990 (9th Cir.1999), the United States argues that "because of significant potential gains and low opportunity costs, prisoners generally file a disproportionate number of frivolous suits as compared to the population as a whole." 190 F.3d at 996. The United States argues that it is rational to recognize that if prisoners had to bear some costs of litigation, they would have more of an incentive to limit suits to those that are meritorious. (Doc. 103 at 12).

This "justification" ignores the economic realities faced by lawyers who represent prisoner plaintiffs in civil rights cases. *See Heller,* 509 U.S. at 319, 113 S.Ct. 2637 (the difference in treatment must have "some footing in the realities of the subject matter addressed by the legislation."). Unlike attorneys who accept criminal appointments from the court, attorneys in section 1983 cases are not guaranteed a fee for work performed in these cases. By accepting a § 1983 case, attorneys assume the risk that they will be paid only if they prevail on the merits, i.e., the case is "successful."

Success in this instance means the case must survive numerous judicial hurdles before arriving at an attorney's fee award. The case must survive sua sponte screening by the Court upon the initial filing of the case. Pursuant to the PLRA, the Court must sua sponte review all prisoner complaints to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. §§ 1915A(a), (b). *See also McGore v. Wrigglesworth,* 114 F.3d 601, 608 (6th Cir. 1997). This occurs "before docketing" or "as soon as practicable after docketing" and throughout the litigation process. *Id.* The case must then survive motions to dismiss and motions for summary judgment on jurisdictional issues, exhaustion issues unique to prisoner civil rights cases, immunity grounds, and on the merits. The case must survive Rule 50, Fed.R.Civ. P., motions at trial. Finally, the plaintiff must ultimately prevail at trial on the merits of his case. Only when all these hurdles are surmounted will a plaintiff's lawyer be faced with the prospect of being paid for the work he or she has performed. When faced with all these hurdles, the attorney's decision to accept an appointment at the court's request, 28 U.S.C. § 1915(e)(1), or to bring a case of his or her own volition is driven by the potential merits of the case. Since only success is rewarded in a prisoner section 1983 case, it is irrational to believe that a financial incentive is offered to a lawyer who accepts a "frivolous" case since it is doomed to failure. To the contrary, the likelihood of success on the merits is the incentive for

filing or accepting an appointment in a prisoner civil rights case. As the case approaches the 50% probability of success target, the potential expenses associated with litigating the case provide the determining factor in accepting or bringing a prisoner civil rights case. Capping attorney's fees has nothing whatsoever to do with the rate of frivolous filings by prisoners.

The United States contends that "the prospect of a large fee award can encourage frivolous suits as well as meritorious ones, because the person who contemplates filing a suit may not accurately perceive that it is frivolous." (Doc. 103 at 14–15). The Court takes judicial notice of the fact that the vast majority of prisoner civil rights cases are filed pro se by prisoners, who are not entitled to an award of attorney fees. *Wright v. Crowell*, 674 F.2d 521 (6th Cir.1982) (per curiam). Thus, the argument waged by the United States applies only to cases filed by attorneys. A complaint is "frivolous" when it cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 328–29, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see also Denton v. Hernandez*, 504 U.S. 25, 32, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). To accept the United States' argument ignores the weighty and very real disincentives posed by the sanctions an attorney faces for bringing a frivolous lawsuit. See Fed. R.Civ.P. 11 and 28 U.S.C. § 1927. This is not rational. Likewise, the United States' citations to cases upholding other provisions of the PLRA which decrease the inducement to file frivolous legal actions have no bearing on the fee cap provision before the Court. (Doc. 103 at 14–15).

The Court declines to follow those courts holding that the PLRA fee caps are rationally related to curtailing frivolous prisoners' suits. *See Madrid v. Gomez*, 190 F.3d 990 (9th Cir.1999); *Collins v.*

*Algarin*, No. 95–4220, 1998 WL 10234, at *9 (E.D.Pa. Jan.9, 1998) (unpublished), *aff'd en banc by an equally divided court, Collins v. Montgomery County Bd. of Prison Inspectors*, 176 F.3d 679, 686 (3d Cir.1999)[4]; *Morrison v. Davis*, 88 F.Supp.2d 799 (S.D.Ohio 2000) (Marbley, J.); *Waterman v. Farmer*, 84 F.Supp.2d 579 (D.N.J.2000). These courts fail to explain the connection between the attorney's fees caps and limiting frivolous prisoner lawsuits. As explained above, by the time a prisoner's case proceeds to a trial on the merits, several judicial determinations have been made that the case is not frivolous. Successful § 1983 prisoner actions are, by definition, not "frivolous."

The Court can conceive of no rational relationship between limiting attorney's fees in successful prisoner civil rights cases and the objective of stemming the tide of frivolous prisoner cases which are, in any event, dismissed by the Court sua sponte at the screening stage. As recognized by the Court in *McLindon v. Russell*, C–1–95–676 (S.D.Ohio June 15, 2000) (Doc. 84), one conceivable aim of the cap on attorney's fees is to reduce the number of attorneys willing to represent prisoners because of reduced financial incentives. "But this purpose smacks of a desire to harm prisoners, a politically unpopular group, which is clearly not a legitimate governmental interest. *Cleburne*, 473 U.S. at 447, 105 S.Ct. 3249; *Weinberger v. Salfi*, 422 U.S. 749, 772, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The limitation on attorney's fees set forth in sections 1997e(d)(2) and (3) is simply unrelated in any rational way to limiting the filing of frivolous prisoner lawsuits." *McLindon*, Slip op. at 10. *See also Walker v. Bain*, 65 F.Supp.2d 591, 602 (E.D.Mich.1999) ("Any relationship between an award of attorney fees to successful prisoner plaintiffs and the initial filing of frivolous civil rights

4. Under the law of the Third Circuit, decisions of a divided en banc court are entitled to no weight. *See Tunis Bros. Co., Inc. v.* *Ford Motor Co.*, 763 F.2d 1482, 1501 (3d Cir.1985), *vacated on other grounds*, 475 U.S. 1105, 106 S.Ct. 1509, 89 L.Ed.2d 909 (1986).

suits is, at best, so attenuated as to be irrational.").

The United States also argues that the PLRA fee cap prevents windfall fee awards and conserves public resources from which attorney's fees under § 1988 are generally awarded.[5] Like the goal of reducing frivolous prisoner lawsuits, protection of the public fisc is a legitimate goal. *See Shapiro v. Thompson*, 394 U.S. 618, 633, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). However, this objective may not be accomplished "by arbitrarily singling out a particular class of persons to bear the entire burden...." *Walker*, 65 F.Supp.2d at 604 (citation omitted). The Supreme Court faced such a distinction in *Rinaldi v. Yeager*, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966). In *Rinaldi*, the Supreme Court struck down on equal protection grounds a state statute which distinguished between indigent criminal defendants sentenced to a prison term and indigent criminal defendants sentenced to probation or a fine. Only those defendants sentenced to a term of imprisonment were required to repay the cost of a transcript in an unsuccessful appeal. *Rinaldi*, 384 U.S. at 307, 86 S.Ct. 1497. Those criminal defendants sentenced to probation or a fine had no obligation to repay such costs. The Supreme Court held that the distinction between persons sentenced to a prison term and those sentenced to probation or a fine was not rationally related to the underlying goal of repaying the expenses of unsuccessful appeals. The *Rinaldi* Court stated:

> To fasten a financial burden only upon those unsuccessful appellants who are confined in state institutions, however, is to make an invidious discrimination. Those appellants who have been sentenced only to pay fines have been accorded the same benefit by the county—a transcript used in an unsuccessful appeal, and all that distinguishes them

from their institutionalized counterparts is the nature of the penalty attached to the offense committed. There is no defensible interest served by focusing on that distinction as a classifying feature in a reimbursement statute, since it bears no relationship whatever to the purpose of the repayment provision. Likewise, an appellant subject only to a suspended sentence or to probation is likely to differ from an inmate only in the extent of his criminal record. That, too, is a trait unrelated to the fiscal objective of the statute.

384 U.S. at 309–310, 86 S.Ct. 1497. The statute was struck down as there was no rational basis for the distinction between unsuccessful appellants who were in prison and those who were not. *See also Lindsey v. Normet*, 405 U.S. 56, 77–79, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972) (law imposing double-bond requirement for appeals in forcible entry and wrongful detainer actions but not on other civil litigants arbitrarily discriminates against tenants appealing from adverse decision).

*Rinaldi* is instructive in this case. The statute here imposes a cap on attorney fees for successful prisoner civil rights plaintiffs which is not imposed on other successful civil rights litigants. The only difference between these successful litigants, like those in *Rinaldi*, is that one class of persons is incarcerated. However, this distinction bears no rational relationship to the purported fiscal objective of the attorney's fee provision. As recognized by the Court in *Walker v. Bain*, the conservation of public funds through the disparate treatment of similarly situated·persons violates equal protection:

> There is no defensible interest served by focusing on th[e] distinction between prisoners and nonprisoners, since it bears no relationship whatever to the purpose of either the attorney fee provision of § 1988 or the cap on such

---

5. Because § 1983 only permits suits against individuals acting under color of state law, attorney's fees are generally awarded against

public officials and, by extension, the public treasury of the states. *See Walker*, 65 F.Supp.2d at 604 and n. 6.

fees.... The only manner in which the distinction between prisoners and non-prisoners relates to the goal of protecting the public fisc is by making prisoners (or the pro bono attorney) bear the entire extent of that burden for no other reason than the fact that they are prisoners (or attorneys who have undertaken to represent prisoners). Such an arbitrary discrimination, as the cases discussed above demonstrate, is not a permissible means of guarding the state's purse.

65 F.Supp.2d at 604–605 (internal quotations omitted), citing *Plyler v. Doe,* 457 U.S. 202, 227, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *Shapiro v. Thompson,* 394 U.S. 618, 633, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Rinaldi v. Yeager,* 384 U.S. 305, 309–310, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); *Silbowitz v. Secretary of Health, Educ. & Welfare,* 397 F.Supp. 862, 867 (S.D.Fla.1975), *summarily aff'd, sub nom. Califano v. Silbowitz,* 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 768 (1977); *Westberry v. Fisher,* 297 F.Supp. 1109, 1115 (D.Me.1969). *See also City of Cleburne,* 473 U.S. at 447, 105 S.Ct. 3249.

Equal protection requires "some rationality in the nature of the class singled out." *Rinaldi,* 384 U.S. at 308–309, 86 S.Ct. 1497. The distinction between successful prisoner civil rights litigants and all other successful civil rights litigants bears no rationality to the fiscal objective of the statute because that goal is accomplished by arbitrarily singling out a particular class of persons, prisoners, to bear the entire burden of accomplishing the goal. Such arbitrary discrimination is an intolerable means of safeguarding the public fisc. "[W]hen Congress arbitrarily saddles one group with the burden of protecting the public fisc, it acts irrationally." 65 F.Supp.2d at 605.

Nor is the distinction between successful prisoner civil rights plaintiffs and all other civil rights plaintiffs rationally related to the stated goal of preventing windfall attorney's fees awards. Judges do not simply make an award of attorney's fees based on the fee application alone. Rather, in attempting to award reasonable attorney's fees, judges consider, among other factors, the experience and skill of the attorney, the complexity of the case, the number of hours reasonably expended, the hourly rate charged by the attorney as well as the market rate for attorneys with similar skill and experience, and the extent to which the successful party achieved success on the claims presented. *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989); *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Coulter v. State of Tennessee,* 805 F.2d 146, 149 (6th Cir.1986), *cert. denied,* 482 U.S. 914, 107 S.Ct. 3186, 96 L.Ed.2d 674 (1987); *Louisville Black Police Officers Organization, Inc. v. City of Louisville,* 700 F.2d 268, 278 (6th Cir. 1983); *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980). To assume that judges award windfall fees in prisoner civil rights cases is both contrary to law and irrational. *See also Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

The United States also contends that the fee cap in section 1997e(d)(3) encourages uniformity and brings attorney's fees in prisoner civil rights cases on par with fees paid in criminal appointments. Unlike prisoner civil rights cases, however, payment to criminal defense attorneys under 18 U.S.C. § 3006A is not dependent on success. The breadth of the fee cap at issue is so far removed from the proposed justification that it deserves no credence. *Romer,* 517 U.S. at 635, 116 S.Ct. 1620. The United States fails to explain how the classification, by targeting only inmates who are successful in civil rights litigation, furthers the goal of uniformity. "[E]ven in the ordinary equal protection case calling for the most deferential of standards, we

insist on knowing the relation between the classification adopted and the object to be attained. The search for the link between classification and objective gives substance to the Equal Protection Clause...." *Romer*, 517 U.S. at 632, 116 S.Ct. 1620. As explained above, the fee cap arbitrarily singles out successful prisoner civil rights litigants, a politically unpopular group, and "raise[s] the inevitable inference that the disadvantage imposed is born of animosity toward the class of persons affected." *Id.* at 634, 116 S.Ct. 1620.

Defendants contend that the limitation on attorney's fees is rationally related to the "disruptive impact that prisoner cases have on government operations by removing subsidies for such cases." (Doc. 98 at 6). They contend that Congress could have been concerned with the operational impact prisoner litigation has on prisons. Defendants state that prisoner litigation diverts prison staff from other duties, increases tension between inmates and staff, and has a negative effect on staff morale. Limiting attorney's fees, according to defendants, fosters the goal of limiting the disruptive impact of prisoner cases on institutional operations.

Defendants made this same argument in *McLindon v. Russell,* C-1-95-676 (S.D.Ohio June 15, 2000) (Doc. 84). The *McLindon* Court found:

> The unstated assumption in this argument is that reducing attorney fees will discourage attorneys from becoming involved in prisoner cases. Even if this is true, cases which are meritorious and survive summary judgment will go forward pro se. Defendants and prison officials must still engage in discovery, confer with attorneys, prepare for trial, and participate in trial. Defendant fails to show how eliminating attorneys from this process is rationally connected to saving time spent in defending prisoner litigation. It is arguable that cases proceeding pro se, because of the inexperience and often ineptitude of prisoners, cost more time to prison officials and the

> courts. Defendant fails to explain how limiting attorney's fees in prisoner civil rights cases somehow reduces tension in the prison or increases staff morale. The rationale set forth by defendant is really an indictment of the impact of prison litigation in general, not merely litigation brought by or pursued by an attorney on behalf of a prisoner. If the number of cases are lessened, this goal is achieved. Successful or meritorious prisoner cases, proceeding pro se or with counsel, will have the same impact on the concerns raised by defendant. Because the connection between the attorney's fees provisions and this goal is so attenuated, the distinction drawn between successful prisoner civil rights litigants and successful non-prisoner civil rights litigants is irrational. *City of Cleburne,* 473 U.S. at 446, 105 S.Ct. 3249.

*McLindon,* slip op. at 13. This Court agrees with the rationale set forth in *McLindon.*

Finally, defendants contend that the PLRA fee cap furthers Congress's interest in reducing perceived abuses by prisoner civil rights lawyers. Defendants contend that Congress believed that lawyers in prisoner cases raise numerous claims of dubious validity in the hopes of prevailing on at least one claim to secure a fee award. They cite to excerpts from committee hearings and the Congressional record in support of this contention. (Doc. 98 at 10).

"[T]he authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which 'represen[t] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation.'" *Garcia v. United States,* 469 U.S. 70, 76, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) (citations omitted). The Supreme Court has "eschewed reliance on the passing statements of one Member ... and casual statements from the floor debates." *Id.* While the comments of the director of the Utah Department of Corrections and the two individual legislators cited by defen-

dants may suggest some support for their contention, they are not persuasive of Congress's intent in enacting the attorney's fee cap provision. Statements by witnesses at committee hearings are not significant indicators of legislative intent, but rather reflect the biases and beliefs of the individual witnesses. *See Kelly v. Robinson,* 479 U.S. 36, 51 n. 13, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) ("We acknowledge that a few comments in the hearings ... may suggest that the language bears the interpretation.... We decline to accord any significance to these statements."). *See also McCaughn v. Hershey Chocolate Co.,* 283 U.S. 488, 493–94, 51 S.Ct. 510, 75 L.Ed. 1183 (1931). In addition, the comments of individual legislators are entitled to little weight in discerning congressional intent. *Garcia,* 469 U.S. at 76, 105 S.Ct. 479; *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 118, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980); *Chrysler Corp. v. Brown,* 441 U.S. 281, 311, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979).[6] The sweeping pronouncements by individual legislators and others cited by defendants are "divorced from any factual context from which [the court] could discern a relationship to legitimate [governmental] interests...." *Romer,* 517 U.S. at 635, 116 S.Ct. 1620.

Defendants also cite to a House of Representatives report in support of this contention. (Doc. 98 at 10). A review of this report indicates a concern that attorney's fees are sometimes awarded in a disproportionate amount in comparison to the court ordered relief. See H.R.Rep. No. 21, 104th Cong., 1st Sess. at 6, 28 (Feb. 6, 1995).[7] However, the fee cap at issue in this case, section 1997e(d)(3), was not included as part of the bill discussed in the House Report. Rather, the attorney's fees provisions of what are now sections 1997e(d)(1)(A) and (B) which require attorney's fees to be "directly and reasonably" incurred in proving a constitutional violation and "proportionally related" to the court ordered relief address the concerns raised in the House Report, not the fee cap at issue in this case. Thus, the Court cannot discern a rational relationship between the attorney's fee cap at issue in

6.  Defendants cite to comments by Representative Hoke. See 141 Cong.Rec. H3289 (Feb. 1, 1995). The colloquy cited is not a discussion of the merits of the PLRA attorney's fees provisions, but is rather a passing comment made to another legislator in a much larger discussion on the "Progress on the Contract With America." In response to a comment concerning frivolous lawsuits by inmates, Representative Hoke states: "[I]n fact there is an element of the bar that makes a full-time living in contacting prisoners and then using shotgun approach lawsuits to file for all kinds of ridiculous and frivolous things like, for example, the food is not good enough, we want better food, we want different kinds of silverware, we want towels that are not so scratchy.... [T]he reason they do this is because the bar, the attorneys, can actually be reimbursed their fees, all of them, by the Federal Government, when they bring these lawsuits, civil lawsuits, on behalf of prisoners." *Id.* These statements are simply inaccurate. As explained above, frivolous claims such as "we want different kinds of silverware" are dismissed sua sponte by the court and when attorney fees are awarded on meritorious claims, numerous factors, including limited success, are considered in awarding a reasonable attorney fee. *See Hensley,* 461 U.S. at 436–37, 103 S.Ct. 1933. In addition, the federal government does not pay attorney fees in section 1983 civil rights cases. Rather, they are awarded against individual defendants acting under color of state law pursuant to section 1983 and may be reimbursed through the state treasuries. *See* footnote 5, *supra.*

7.  The attorney's fees provision in the House of Representatives Report states:

    ATTORNEY'S FEES—No attorney's fee under section 722 of the Revised Statutes of the United States (42 U.S.C.1988) may be granted to a plaintiff in a civil action with respect to prison conditions except to the extent such fee is—
    (1) directly and reasonably incurred in proving an actual violation of the plaintiff's Federal rights; and
    (2) proportionally related to the extent the plaintiff obtains court ordered relief for that violation.
    H.R.Rep. No. 21, 104th Cong., 1st Sess. at 6 (Feb. 6, 1995), Title III, Sec. 3626(f).

this case and the proffered justification by defendants.

The PLRA's limitation on the hourly rate of attorney's fees to successful prisoner civil rights litigants lacks a rational relationship to the governmental interests advanced by the United States and defendants. Rather, "its sheer breadth is so discontinuous with the reasons offered for it that the [fee cap] seems inexplicable by anything but animus toward the class that it affects." *Romer*, 517 U.S. at 632, 116 S.Ct. 1620. The "link" between the classification at issue and the proffered objectives is noticeably absent in this case. It is irrational to penalize successful prisoner civil rights litigants for vindicating their constitutional rights. The "inevitable inference" that arises from a law of this sort is that it is "born of animosity toward the class of persons affected." *Id.* at 634, 116 S.Ct. 1620. Accordingly, the Court holds that the section 1997e(d)(3) fee cap is not rationally related to any legitimate governmental interest and violates the equal protection component of the Fifth Amendment. Therefore, plaintiff is entitled to an award of attorney's fees without regard to the hourly rate limitations set forth in section 1997e(d)(3).

## II. Plaintiff is Entitled to an Award of Attorneys' Fees.

The Court **GRANTS** plaintiff's request for attorneys' fees. (Doc. 96).

■ Pursuant to 42 U.S.C. § 1988:

In any action or proceeding to enforce a provision of section [ ] ... 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988(b). In addition, plaintiff's request for attorney's fees is governed by section 803(d) of the PLRA which requires that the fee request be directly and reasonably incurred in proving a violation of plaintiff's rights and that the fee be proportional to plaintiff's relief. 42 U.S.C.

§ 1997e(d)(1); *see Walker v. Bain*, 65 F.Supp.2d at 597; *Clark v. Phillips*, 965 F.Supp. 331 (N.D.N.Y.1997).

As defendants concede, plaintiff is a prevailing party pursuant to 42 U.S.C. § 1988. *See Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Northcross v. Bd. of Ed. of Memphis City Schools*, 611 F.2d 624, 633 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980). Plaintiff prevailed both at trial and on appeal. He now seeks an award of $29,839.50 in attorneys' fees and $1,107.14 in expenses in connection with the appeal.

Section 1997e(d)(1)(A) requires that the fee be "directly and reasonably incurred in proving an actual violation of the plaintiff's rights." 42 U.S.C. § 1997e(d)(1)(A). In the instant case, plaintiff proved by a preponderance of the evidence at trial that defendants Moore and Whitlow violated his Eighth Amendment rights under the Constitution. Subsequent to the trial, defendant Whitlow sought relief from judgment under Fed.R.Civ.P. 60(b) on the issue of exhaustion of administrative remedies. Plaintiff's attorneys expended 21.0 hours in responding to the Rule 60(b) motion (Robert Laufman: 19.3 hours; Paul Laufman: 1.7 hours). This Court denied the motion and defendants appealed.

On appeal, plaintiff's attorneys spent 134.5 hours on appellate activities, including brief writing (Robert Laufman: 59.5 hours; Paul Laufman: 75 hours). Plaintiff's attorneys researched and briefed several critical issues involving the PLRA which had not yet been decided by the Sixth Circuit. These included whether exhaustion is required when damages are not available through the grievance system; whether a claim of excessive force is a "prison condition" within the meaning of the PLRA requiring exhaustion; whether a claim of deliberate indifference (failure to protect) is a prison condition subject to exhaustion; and whether substantial compliance constitutes exhaustion even where the grievance system is not completely

exhausted. Plaintiff's attorneys also researched and briefed the issue of admissibility of polygraph evidence at trial. After briefing was complete and shortly before oral argument, the Sixth Circuit decided that the exhaustion requirement applies to claims of excessive force, *Freeman v. Francis*, 196 F.3d 641 (6th Cir.1999), and where plaintiff seeks only monetary relief. *Wyatt v. Leonard*, 193 F.3d 876 (6th Cir. 1999). In view of the *Freeman* decision, the Court of Appeals found this Court erred in holding that the term "prison condition" as used in section 1997e(a) includes claims of excessive force. Nevertheless, the Sixth Circuit upheld this Court's ruling that plaintiff had in fact exhausted his administrative remedies prior to filing his federal complaint. *Wolff v. Moore*, 199 F.3d 324, 328–29 (6th Cir. 1999). The Court of Appeals also found this Court's ruling on the polygraph evidence to be harmless. *Id.* at 329. Thus, plaintiff prevailed on the appeal.

A review of the attorney's fees application submitted by counsel for plaintiff shows that the time spent by counsel in responding to the Rule 60(b) motion and on appeal was directly related to the issue of plaintiff's right to bring suit in the first instance and to the finding of an Eighth Amendment violation. Thus, the fees sought were necessarily incurred in seeking redress for the Eighth Amendment violations. Therefore, the Court finds that the attorneys' fees sought were directly and reasonably incurred in proving that plaintiff's constitutional rights were violated within the meaning of § 1997e(d)(1)(A). *See Clark*, 965 F.Supp. at 334, citing *Weaver v. Clarke*, 933 F.Supp. 831, 836 (D.Neb. 1996). *See also Northcross*, 611 F.2d 624 (services relating to appeals are compensable under section 1988).

Section 1997e(d)(1)(B) further requires that the amount of the fee be "proportionately related to the court ordered relief for the violation" or that "the fee was directly and reasonably incurred in enforcing the relief ordered for the violation." 42 U.S.C. § 1997e(d)(1)(B)(i) & (ii). This "proportionality" requirement merely codifies pre-existing law regarding attorney's fees under 42 U.S.C. § 1988. *See Boivin v. Merrill*, 66 F.Supp.2d 50, 52 (D.Me.1999). In *Boivin*, the Court found that an award of attorney fees of $3,892.50 was reasonable and appropriate even though nominal damages of only $1.00 was awarded. The court, relying on the rationale set forth in the First Circuit in *O'Connor v. Huard*, 117 F.3d 12, 18 (1st Cir.1997) and the Supreme Court in *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), found the fees requested to be "eminently reasonable" in view of "the deterrent impact of the litigation on those who otherwise would violate a prisoner's constitutional rights and the need to provide attorneys with an incentive to represent litigants seeking to vindicate such rights." 66 F.Supp.2d at 52. Likewise, the Court in *Morrison v. Davis*, 88 F.Supp.2d 799 (S.D.Ohio 2000) (Marbley, J.), found that in view of the plaintiff's vindication of his Eighth Amendment rights at trial and the deterrent effect of the punitive damages award, a fee award of $53,792.25 was not inherently disproportionate to an award of $15,000.00 in damages. *See also Searles v. Van Bebber*, 64 F.Supp.2d 1033, 1042 (D.Kan.1999) (fee award $30,621.83 was sufficiently proportional to jury award of actual damages of $3,650 and punitive damages of $42,500); *Clark v. Phillips*, 965 F.Supp. 331, 334 (N.D.N.Y.1997) (award of $7921.96 in attorney's fees was 79% of the judgment award of $10,000 and "proportionately related" to judgment).

In this case, plaintiff was awarded $8,250 in compensatory damages and $75,000 in punitive damages for the Eighth Amendment violations. He vindicated significant constitutional rights to be free from cruel and unusual punishment. The punitive damage awards will have a significant deterrent impact on those "who otherwise would violate a prisoner's constitutional rights." *Boivin*, 66 F.Supp.2d at 52. Plaintiff seeks an award of $29,839.50 in

attorneys' fees. The fees requested are approximately 36% of the judgment awarded. Thus, the Court finds that the fees requested are proportionately related to the total jury award of $83,250.00.

Since plaintiff has met the requirements of section 1997e(d)(1)(A) and (B), the Court now determines the amount of attorneys' fees to be awarded. The recognized method for calculating an award of attorney's fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The Court must consider the degree of success obtained by plaintiff in determining an appropriate award of attorney's fees. *Id.* at 436, 103 S.Ct. 1933. *See also Farrar*, 506 U.S. at 114, 113 S.Ct. 566; *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1169 (6th Cir.1996); *Cramblit v. Fikse*, 33 F.3d 633, 635 (6th Cir.1994). There is no decisive formula or rule for determining the degree of success achieved. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37, 103 S.Ct. 1933. Where the Court decides to eliminate or reduce the hours of service documented by counsel's affidavit, it must identify the hours eliminated and articulate its reasons for any such reduction. *Northcross v. Bd. of Educ. of Memphis City Schools*, 611 F.2d 624, 636–37 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980). Hourly rates should not exceed the market rate necessary to encourage competent lawyers to undertake representation. *Reed v. Rhodes*, 179 F.3d 453, 472–73 (6th Cir. 1999); *Coulter v. Tennessee*, 805 F.2d 146, 150 (6th Cir.1986). *See also Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (a reasonable attorney fee is one that is adequate to attract competent counsel, yet does not produce a windfall to attorneys).

Plaintiff seeks compensation for a total of 163.3 hours. Plaintiff submits the declaration of Robert Laufman and detailed time sheets showing a total of 86.6 hours expended after the judgment was entered. (Doc. 96, Declaration of Robert Laufman, Exh. 1). Plaintiff also submits the declaration of Paul Laufman and a detailed time billing statement showing a total of 76.7 post-judgment hours expended by Paul Laufman. (Doc. 96, Declaration of Paul Laufman, Exh. 3). As explained above, the hours expended in responding to the Rule 60(b) motion and on appeal were reasonable. This request includes compensation for 7.8 hours for preparation of the motion for fees and for the separately filed memorandum challenging the PLRA fee limits, which is permissible. *See Northcross*, 611 F.2d at 637; *Weisenberger v. Huecker*, 593 F.2d 49 (6th Cir.1979), *cert. denied*, 444 U.S. 880, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979). *See also Hernandez v. Kalinowski*, 146 F.3d 196 (3d Cir.1998) (fees for preparing and litigating motion requesting fees and costs are recoverable under the PLRA). Plaintiff's attorneys have exercised billing judgment and have eliminated claims for an additional 44.2 hours (Robert Laufman 39.2 hours; Paul Laufman 5 hours) (Doc. 96, Exhs.3, 4). *See Hensley*, 461 U.S. at 437, 103 S.Ct. 1933. Attorney Robert Laufman requests an hourly rate of $225. Attorney Paul Laufman requests an hourly rate of $135. Plaintiff also requests $1,107.14 in costs.

With the exception of the issues relating to the constitutionality of the PLRA attorney fees provision, defendants do not dispute the number of hours expended and rate requested by counsel in this case. Nor do defendants object to reimbursement of the expenses claimed by plaintiff. (Doc. 98 at 1).

After carefully reviewing the declarations, time sheets, and billing statements of Messrs. Robert and Paul Laufman, the Court determines that $29,839.50 is a reasonable award of attorneys fees in this case. In addition, the Court determines

that an award of costs in the amount of $1,107.14 is appropriate. *See Northcross,* 611 F.2d at 639. For the reasons stated by plaintiff at pages 6 through 9 of his memorandum in support of attorneys fees, the Court accepts the hourly rate of $225 for attorney Robert Laufman and $135 for attorney Paul Laufman. (Doc. 96 at 6–9). The Court also finds the time expended by plaintiff's attorneys on responding to the Rule 60(b) motion and on appeal to be reasonable. Counsel for plaintiff obtained exceptional results in this matter. Not only did counsel prove that defendants violated plaintiff's Eighth Amendment rights, they obtained significant compensatory and punitive damages in this case. These exceptional results dictate a fully compensatory attorneys fee in this matter. *See Hensley,* 461 U.S. at 435, 103 S.Ct. 1933.

 Nor should the fee be reduced because plaintiff did not ultimately prevail on the issue of whether excessive force claims are "prison conditions" within the meaning of the PLRA requiring exhaustion of administrative remedies. Although the Sixth Circuit ultimately interpreted the PLRA exhaustion requirement to require exhaustion for such claims, it was reasonable for plaintiff to expend time advancing his interpretation of the statute on this issue. This Court found in plaintiff's favor on this issue and it was not until after plaintiff researched and briefed the issue on appeal that the Sixth Circuit actually ruled on the precise issue in *Freeman v. Francis,* 196 F.3d 641 (6th Cir.1999). Plaintiff advanced this contention in good faith, and ultimately prevailed on the alternative ground that he nevertheless exhausted his administrative remedies in this case. See *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. The Sixth Circuit's rejection of plaintiff's interpretation of "prison conditions" is not a sufficient reason for reducing the fee. *Id.* In the end, plaintiff obtained the result he sought: a decision upholding of the finding of liability against both defendants and the award of compensatory and puni-

tive damages. Therefore, the Court declines to reduce the fee award in this case.

In conclusion, the Court grants plaintiff's requests for attorneys fees in the total amount of $29,839.50 and costs of $1,107.14. The award of attorneys fees and costs shall be joint and several against both defendants since both defendants pursued an appeal of this matter.

**IT IS SO ORDERED.**