In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4084

TERRENCE SMITH,

Plaintiff-Appellant,

v.

ROBERT ZACHARY, JAMES P. NICKERSON,
Lieutenant, HERMAN S. NELSON, GRACIANO
ARROYO, JAMES A. PHILLIPS, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 96 C 507--Gerald B. Cohn, Magistrate Judge.

Argued April 9, 2001--Decided June 28, 2001

   Before POSNER, EVANS, and WILLIAMS, Circuit
Judges.

   EVANS, Circuit Judge.  The issue
presented in this case is whether a
federal prisoner must satisfy the
exhaustion requirement of the Prisoner
Litigation Reform Act (PLRA) when he
claims he was beaten by prison guards.
The prisoner, Terrence Smith, argues that
his claim--the result of an alleged act
of excessive force against him--is exempt
from the PLRA's exhaustion requirement
because it's outside the scope of the
phrase "prison conditions" under the Act.

   In 1996 Smith filed this suit pro se/1
seeking $3.5 million in damages for
allegedly being beaten, in 1995, by
prison guards in retaliation for
participating in a prison riot. The
federal prison system has an
administrative review process which
requires prisoners to notify the prison
staff of a complaint within 20 days. If
the prisoner is not satisfied with the
warden's response, he can appeal on a
formal basis to the regional and then to
the central office of the Bureau of
Prisons. Smith filed an informal
complaint 55 days late and failed to
appeal the warden's response through the
various tiers of administrative review.

The amended version of the PLRA sec. 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . ." 42 U.S.C. sec. 1997e(a) (1996). Because the word "conditions" is plural, Smith argues that the plain meaning of the term "prison conditions" can only refer to on-going circumstances that affect the prison population as a whole. It was not intended, he says, to include an isolated event, such as an assault in which a specific inmate is singled out and harmed. Moreover, he contends it would not be cricket to look to a related statute--Title 18 U.S.C. sec. 3626--as an aid in determining the meaning of "prison conditions" in sec. 1997e.

We do not interpret statutes in a vacuum. The plain meaning rule is applicable when the statutory language is clear, unambiguous, and not controlled by other parts of the act or other acts on the same subject. 2A Norman J. Singer, Sutherland Statutory Construction sec. 46:01 (rev. 6th ed. 2000). Thus, "the meaning of statutory language, plain or not, depends on context." Holloway v. United States, 526 U.S. 1, ___, 119 S. Ct. 966, 970 (1999) (quoting King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991)). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, ___, 120 S. Ct. 1291, 1301 (2000) (quoting Davis v. Michigan Dept. of Treasury, 489 U.S. 803, 809, 109 S. Ct. 1500 (1989)). Thus, the meaning of a statute may be affected by a related act, especially if that act provides greater specificity on the issue at hand. Id.

Here, although sec. 1997e does not define the term "prison conditions," another section of the PLRA does. Amended on the same day, Title 18 U.S.C. sec. 3626 is part of the same legislation as sec. 1997e and addresses the same subject--the appropriate remedies for and limitations on prisoner litigation. Smith argues that the two statutes have entirely different objectives; that sec. 3626 limits prospective relief while sec. 1997e prevents prisoners from bringing

frivolous suits. We think Smith's reading of both statutes is a tad too narrow. Both sections are devoted to various aspects of prison litigation, including: settlement agreements, the appointment of special masters, attorneys' fees awards, the use of telephonic hearings, waiver, and limitations on recovery. Neither statute is a one-issue act and both are tailored to address problems unique to incarcerated litigants. More importantly, both are part of the same legislation with the same overarching objectives--to enable prison officials to resolve complaints internally and to limit judicial intervention in the management of state and federal prisons. Thus, it makes good sense to assume that a definition provided by Congress in one statute applies to another related statute. On this point, three of our sister circuits are in agreement. See Higginbottom v. Carter, 223 F.3d 1259 (11th Cir. 2000); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000), cert. granted, 121 S. Ct. 377 (Oct. 20, 2000) (No. 99-1964);/2 Freeman v. Francis, 196 F.3d 641 (6th Cir. 1999).

In sec. 3626, Congress defines the term "a civil action with respect to prison conditions" to mean either "an action with respect to the conditions of confinement" or a suit arising from the "effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. sec. 3626(g)(2). Smith's claim falls within the second half of this definition. He was affected by an action, allegedly an assault, by government officials, viz., prison guards. However, Smith argues that the designation "government official" does not apply to prison guards, but rather refers only to "senior policy-making and administrative officials." We find no basis for adding these qualifiers to the plain language of the statute.

Even were we to disregard the guidance provided by Congress in sec. 3626(g)(2) and to look only to the term "prison conditions" to determine the scope of sec. 1997e, we would reach the same result. Smith asks us to apply the plain-meaning rule concluding that the plural word "conditions" cannot include a single or momentary matter such as an assault. First, the distinction between plural and singular words is not scrupulously

observed in legislative language. 2A Sutherland Statutory Construction sec. 47:34. For instance, the opening section of the United States Code, of which sec. 1997e(a) is a part, contains the following rule of construction: "In determining the meaning of any Act of Congress, unless the context indicates otherwise . . . words importing the plural include the singular." With this guidance, we assume Congress intended the plural word "conditions" to include a singular event.

Second, Smith crafts his claim as an isolated event, a freak occurrence that will not be repeated. However, the nature of the event is open to interpretation. An assault by a prison guard could be a by-product of systemic problems, including poor hiring procedures, insufficient training and supervision, or an inadequate procedure for responding to prison riots or insubordinate behavior by prisoners. Given that part of a prison guard's job is to control inmates, the use of excessive force in achieving this end can be viewed as a management failure, not only as a random act of violence. We read the term "prison conditions" in context--not only as it relates to other statutory provisions, but with regard to the real-world environment in which sec. 1997e applies. Matter of Handy Andy Home Improvement Ctrs., Inc., 144 F.3d 1125, 1128 (7th Cir. 1998) ("When context is disregarded, silliness results"). In the context of prisons, harassment from correctional officers or government officials is not equivalent to an unsolicited attack on the street; rather, the harassment is made possible by the correctional environment. Thus, a remedy lies in addressing prison conditions that facilities or tolerates aberrant behavior by guards.

Finally, we note the obvious: no canon of statutory interpretation requires us to abandon common sense. Here, Smith hangs his hat not on a single word, but on a single letter. Based on this, he asks us to create an exception allowing for speedy review of factually rich, excessive force claims affecting a single inmate, while requiring claims concerning prison policies affecting the entire prison population to proceed through administrative review. This is

counterintuitive. Not only would claims affecting the least number of people be addressed first, but judges would be required to review these factually intense claims of assault and harassment without the benefit of the administrative review process, where, at a minimum, the basics of who-did-what-to-whom are at least given some initial consideration. Again, the plain meaning rule does not strap us to every word and letter if, in animating such words, we would reach an absurd result. See Johnson v. United States, 529 U.S. 694, 707, 120 S. Ct. 1795, 1804 (2000); United States v. Balint, 201 F.3d 928, 932 (7th Cir. 2000) ("[O]ur interpretation is guided not just by a single sentence or sentence fragment, but by the language of the whole law . . . .").

Next, Smith argues that regardless of the statutory language, the legislative history and purpose of the PLRA supports his position. He contends that the only purpose of sec. 1997e is to ferret out frivolous claims and implies that excessive force claims are never frivolous. Smith views the addition of the words "with respect to prison conditions" to the amended version of sec. 1997e as a signal that Congress wanted to create a narrow exhaustion requirement that would not apply to claims involving particularized instances of force. He looks to a recent decision of the Second Circuit for support. Nussle v. Willette, 224 F.3d 95, 101 (2d Cir. 2000), cert. granted, 2001 WL 589145 (June 4, 2001) (No. 00-853) (term "prison conditions" does not refer to single or momentary matters directed at particular individuals)./3

While we will concede that restricting frivolous claims was one of the objectives served by sec. 1997e, it was not the only purpose, nor is it the only benefit garnered from requiring litigants to utilize the prison grievance process before filing suit in court. The exhaustion requirement provides the prison system with prompt notice of problems. This, of course, is preferable to a system where the prison might get its first notice of a claim in a lawsuit filed several years later just before the running of a statute of limitations.

Requiring prompt notice and exhaustion

also gives prison officials an opportunity to address a situation internally, which in a case like this could involve relocating Smith, firing guards, hiring new ones, or providing additional training and supervision to staff. The process also helps develop the factual record, before the prisoner moves to the courtroom. In fact, the administrative process may make negotiation more effective and may serve to reduce the scope of litigation should some, if not all, of the inmate's grievances be resolved internally. Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999) ("negotiation may be more effective if a lawsuit is not on file").

Next, we note that deterring frivolous suits could not have been the only issue Congress had in mind. In 1996 Congress did create a subsection of sec. 1997e which specifically addressed frivolous suits--subsection c. This subsection gives courts the power to dismiss suits that are frivolous, malicious, or fail to state a claim. 42 U.S.C. sec. 1997e(c) (1996). If the only purpose of sec. 1997e was to bar frivolous suits, then Congress need not have done more. Yet, the 1996 amendment added several other provisions to sec. 1997e concerning attorneys' fees, telephonic hearings, and waiver. Moreover, Congress specifically strengthened the exhaustion requirement of sec. 1997e in three ways:  (1) by making exhaustion mandatory rather than discretionary, (2) by extending the reach of the requirement to all federal claims, not only sec. 1983 actions, and (3) by removing the prior restriction that exhaustion was required only if the prison system had an adequate administrative review process which complied with some minimum procedural standards. See 42 U.S.C. sec. 1997e (1994). Given this flurry of activity, we must conclude that Congress intended to create a comprehensive exhaustion requirement for all federal claims.

Nonetheless, citing sound-bites from the pre-passage floor debates, Smith argues that Congress intended to create a subject matter exception to the exhaustion requirement for excessive force claims because these are particularized attacks. First, the PLRA already contains a subject matter

exception, suggesting that Congress had already considered which class of cases should be exempt from this legislation. Walker v. O'Brien, 216 F.3d 626, 633-37 (7th Cir. 2000) (PLRA does not apply to petition for writ of habeas corpus properly filed under either 28 U.S.C. sec. 2241 or sec. 2254); 2A Sutherland Statutory Construction sec. 47.23 (The general rule of statutory construction is that the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded.).

Second, Smith mischaracterizes the effect of the exhaustion requirement. Requiring administrative review does not foreclose a prisoner's ability to file suit, it merely creates a necessary precondition. The requirement is not designed to stop prisoners from filing suits, but rather to facilitate the litigation process. In particular, the development of the factual record may help rather than hinder prisoners, enabling them to succinctly present their cases.

More importantly, the standard Smith urges us to accept--an exception for particularized instances of force directed at a specific inmate--is a cumbersome test to apply. Following this standard would validate the old cliche of the exception swallowing the rule. Any claim could be fashioned to fit this requirement, not merely claims of excessive force. In fact, applying this standard, the Second Circuit has recently extended the scope of the exception it recognized in Nussle by holding that particularized instances of retaliatory conduct, like particularized instances of force, are not subject to the PLRA's administrative exhaustion requirements. Lawrence v. Goord, 238 F.3d 182, 185 (2d Cir. 2001). The Second Circuit, it seems to us, is traveling down a slippery slope. The better view, we think, is that of the Third, Sixth, and Eleventh Circuits, which agree with the view we express in this opinion. See Booth, 206 F.3d at 295; Freeman, 196 F.3d at 644; and Higginbottom, 223 F.3d at 1260.

In addition, even were we to accept Smith's argument that the only purpose Congress had in passing sec. 1997e was to

bar frivolous lawsuits, even this limited objective would not be served by creating the exception he urges. Were we to create either a subject matter exception for excessive force claims or a more flexible exception for particularized instances of force, we would open the doors to frivolous suits. Excessive force claims can be frivolous. Inmates can allege they were subject to vicious nudges. Or, to stretch the case, a dirty look by a prison guard could be characterized as a particularized instance of harassment singling out one inmate. The possibilities are limitless and the end result would be to undermine the steps Congress took in 1996 to strengthen the administrative review process in prisons, both state and federal.

Finally, the recent decision in Booth adds further to the view that the PLRA's exhaustion requirement is indeed very broad. There the Supreme Court held that administrative exhaustion was required despite the fact that the only remedy sought--money damages wwas not available as an award in Pennsylvania's prison grievance system. It is also interesting to note that the Supreme Court, although not discussing the point, required exhaustion in Booth even though the prisoner's claim grew, like here, out of an alleged assault of a prisoner by corrections officers.

We now turn to Smith's two final arguments, futility and substantial compliance. Citing dicta in Perez v. Wisconsin Department of Corrections, 182 F.3d 532, 538 (7th Cir. 1999) ("It is possible to imagine cases in which the harm is done and no further administrative action could supply any remedy."), Smith argues that he was not required to exhaust his administrative remedies because his injury was complete and the remedy he sought was monetary damages, which the administrative review process does not provide. Booth, as we just noted, ends this argument. Moreover, we do not accept Smith's characterization of his claim as complete. When the incident occurred, Smith was still serving his term and was still subject to the supervision of his alleged abusers. Had he filed an administrative claim there were several remedies available to him, including transferring him to another facility or disciplining or

retraining the guards.

Finally, Smith argues that the incident occurred in 1995 before the passage of the PLRA amendments, and thus by filing several complaints he substantially complied with the exhaustion requirement. The substantial compliance doctrine arises only when a prisoner's claim arose before April 26, 1996, the effective date of the PLRA amendment. In such cases, a prisoner may show that he substantially complied with the exhaustion requirement by making a good faith attempt to reach the appropriate prison official. See Wolff v. Moore, 199 F.3d 324, 327 (6th Cir. 1999). In response to the government's motion to dismiss based on Smith's failure to exhaust administrative remedies, Smith argued only that he was not required to exhaust. Thus, by failing to raise the issue of substantial compliance before the district court, he waived this argument. Schoenfeld v. Apfel, 237 F.3d 788, 793 (7th Cir. 2001).

AFFIRMED.

FOOTNOTES

/1 We express our appreciation to Sunil R. Harjani, an attorney with the Chicago firm of Jenner & Block, who, acting pro bono at the request of the court, has very ably represented Mr. Smith on this appeal.

/2 After oral argument on this appeal, just several days ago on May 29, the Supreme Court affirmed the Third Circuit in Booth (see 2001 WL 567712), an opinion we will comment on in a few moments.

/3 Nussle begins the discussion of when administra- tive review should be required by noting that exhaustion is not a prerequisite for maintaining an action under sec. 1983. Nussle v. Willette, 224 F.3d 95, 97-98 (2d Cir. 2000). We note that in 1996 Congress extended the scope of the PLRA exhaustion requirement to claims arising under any federal law. Because the exhaustion require- ment is no longer restricted to civil rights cases, the rationale for exempting these suits from administrative review is even less compel- ling.

Williams, Circuit Judge, dissenting. I do not believe that the plain meaning of "prison condi- tions" under sec. 1997e(a), or the definition in

sec. 3626(g)(2), includes the random, violent assault alleged in this case./1 As that is the only question we need to resolve today, I will not reach the issue whether a categorical exemption exists for claims of excessive force, except to note that my analysis is consistent with opinions that conclude that a categorical exemption does exist. See Nussle v. Willette, 224 F.3d 95, 99-106 (2d Cir. 2000), cert. granted, Porter v. Nussle, No. 00-853, 2001 WL 589145 (U.S. June 4, 2001); Booth v. Churner, C.O., 206 F.3d 289, 300-03 (3d Cir. 2000) (Noonan, J., concurring and dissenting). Nor do I believe that a reasonable consideration of the context, object, and policy of sec. 1997e and the Prison Litigation Reform Act ("PLRA") as a whole warrants concluding otherwise. I therefore respectfully dissent.

When the language of a statute is plain and unambiguous, we apply the plain meaning (period). Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992); United States v. Hayward, 6 F.3d 1241, 1245 (7th Cir. 1993). In ascertaining the plain meaning of the language, however, we should not read with blinders on--context matters. Robinson v. Shell Oil Co., 519 U.S. 337, 340-41 (1997). But that latter principle has limits; invoking "context," we may not redraft language Congress enacted simply because the language may fail to achieve Congress's entire purpose as we perceive it. See Dunn v. Commodity Futures Trading Comm'n, 519 U.S. 465, 470 (1997) ("[A]bsent any indication that doing so would frustrate Congress's clear intention or yield patent absurdity, our obligation is to apply the statute as Congress wrote it." (alteration in original) (internal quotation marks omitted)); see also Smith v. United States, 508 U.S. 223, 247 n.4 (1993) (Scalia, J., dissenting) ("Stretching language in order to write a more effective statute than Congress devised is not an exercise we should indulge in."); Pavelic & LeFlore v. Marvel Entm't Group, 493 U.S. 120, 126 (1989) ("Our task is to apply the text, not to improve upon it."); United States v. Locke, 471 U.S. 84, 95 (1985) ("[T]he fact that Congress might have acted with greater clarity or foresight does not give courts a carte blanche to redraft statutes in an effort to achieve that which Congress is perceived to have failed to do."). In this case, the majority appears to be fixing the language of sec. 1997e(a), more than truly interpreting it according to its plain meaning, context considered.

To the language of the statute, then. The statute itself does not define "prison conditions." If only as a preliminary, working definition, Webster's Dictionary defines "conditions" as "attendant circumstances: existing state of affairs." Webster's Third New International

Dictionary 473 (1986). As examples, Webster's lists "living conditions," "playing conditions," and "adverse weather conditions." Id. Conditions, as the definition suggests, does not refer to random events. Accord Nussle, 224 F.3d at 101. For instance, a rotted tree that happens to fall on an unsuspecting golfer while playing on a golf course is not a "playing condition"/2 of that course. Furthermore, when the random event is an action (i.e., conduct by a person), the description seems to evoke more discord than sense. For instance, and closer to the facts of our case, one would not say that a teacher's sexual abuse of a student is part of "elementary school conditions."

In common parlance, conditions--circumstances or states, under our definition--largely refer to the physical environment or surroundings in which something is situated. When applied to conduct specifically, the term implies, and seemingly requires, that the conduct occur with regularity, meaning that it is common and usual--which, when applied to conduct of officials part of an institution, suggests a policy or routine practice in the institution. As an example, in a high crime area a robbery (though not always frequent) is a "condition," because it is common and usual in such an area. Or, taking the first of the two earlier examples, if rotted trees are widespread on a golf course and frequently fall (even if on the same hapless golfer), then falling trees could be said to be a "condition," because common and usual to that course./3 But it is strange, if not strained, to refer to a random, violent assault by prison officials as conditions, or as a condition./4

But I do not understand my colleagues to quibble with the plain meaning of the statute we are asked to interpret. Instead, the majority borrows the definition of prison conditions contained in 18 U.S.C. sec. 3626(g)(2)--another provision of the PLRA passed along with sec. 1997e(a)--which defines a "civil action with respect to prison conditions" as "the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." I must, however, take issue with the conclusion that the random, violent assault in this case fits within that definition.

Apparently the majority concedes that excessive force is not included within the first clause of the definition. Ante, at 4; see also, e.g., Booth v. Churner, C.O., 206 F.3d 289, 294 (3d Cir. 2000) aff'd on other grounds, Booth v. C. O. Churner, 121 S. Ct. 1819 (2001). Indeed, excessive force fits no better in that definition (conditions of confinement) than the language of

sec. 1997e(a) (prison conditions) for essentially the same reasons, which is hardly a surprise because the language is virtually the same. The majority concludes that excessive force is included within the second clause. Ante, at 4. But the language of the second clause addresses only claims relating to the "effects of actions."

Claims of excessive force are not claims relating to effects; they are claims relating to actions. See Hudson v. McMillian, 503 U.S. 1, 7-11 (1992). Hudson recognizes this difference, excluding excessive force claims from the "extreme deprivation" requirement applicable to conditions of confinement claims under the Eighth Amendment. Id. For claims of excessive force, the action itself violates the Eighth Amendment. Id. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." (citations omitted)). But for conditions-of-confinement-type claims, the extreme deprivation--i.e., the effects--creates an Eighth Amendment violation, not the actions themselves. See Rhodes v. Chapman, 452 U.S. 337, 345-47 (1981). Therefore, the second clause definition, addressing claims relating to the "effects of actions," cannot necessarily be said to include excessive force.

So it cannot be the language of the statute that is driving the majority to conclude that claims of excessive force are included within "prison conditions" under sec. 1997e(a). Rather, the majority relies on the context, object, and policy of the statute to conclude that claims of excessive force should be included within the exhaustion requirement of sec. 1997e(a). Ante, at 4-9. But equally persuasive arguments have been advanced by others that they should not be included. See Nussle, 224 F.3d at 103-06; Booth, 206 F.3d at 301-02 (Noonan, J., concurring and dissenting). We are simply not in the business of deciding what statutes should or should not say, but deciding what they in fact do say. And, this statute certainly does not say that the random, violent assault involved in this case must be exhausted in administrative proceedings./5

It may be that Congress really did want to include this kind of claim in sec. 1997e(a)'s "prison conditions" exhaustion requirement. The problem is that Congress did not write language in this statute to accomplish that objective. In the end, I am not convinced that we have a justifiable reason to strain the language Congress wrote to accomplish an intent we can only speculate exists. I do not believe that the plain meaning of prison conditions under sec. 1997e(a)

includes the random, violent assault involved in this case, and therefore I respectfully dissent.

FOOTNOTES

/1 Smith alleges that several prison guards entered his cell, ordered him to walk out, and immediately after he complied, beat him in the face, buttocks, and groin. According to Smith, the guards handcuffed him, beat him while cuffed, and took him to prison showers where they continued to hit, stomp, and jab him with batons. Smith was next taken outside to a special housing unit where the guards slammed his head into a metal plate, stripped him naked, and beat him repeatedly over the span of an unspecified length of time. The guards finally locked him in a segregation cell, naked and bleeding, releasing him the next day and denying him medical treatment until approximately one week later.

/2 Note, whether one uses the singular "condition" or the plural "conditions," the incongruity remains the same.

/3 One would not say that falling trees are a "playing condition," however, because dodging falling trees has nothing to do with the game of golf.

/4 Worse yet, it seems unreasonable to refer to such conduct as prison conditions. Accord Booth, 206 F.3d at 301 (Noonan, J., concurring and dissenting) ("That [the plaintiff's] alleged blow took place in a prison does not make it 'prison conditions.'"); cf. Farmer v. Brennan, 511 U.S. 825, 834 (1994) ("Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'").

/5 I express no opinion whether the context, object, and policy of sec. 3626 (a very different statute) warrants including in that section claims of excessive force, or the random, violent assault in this case.