In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2978

Cedric R. Johnson,

Plaintiff-Appellant,

v.

Jon E. Litscher, Secretary of the Wisconsin
Department of Corrections, in his official capacity,
and DONALD G. BANEY, JOANNE BARTON, THOMAS
BORGEN, KEVIN CANNON, JASON MacPHETRIDGE,
CLYDE MAXWELL, ERIN RICHARDS and JESS ROONEY
in their personal capacities,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 00 C-0401 C--Barbara B. Crabb, Chief Judge.

Argued January 11, 2001--Decided August 15, 2001


  Before Flaum, Chief Judge, and Cudahy and
Posner, Circuit Judges.

  Cudahy, Circuit Judge.  Cedric R. Johnson
appeals the dismissal of his 42 U.S.C.
sec. 1983 complaint against members of
the Wisconsin Department of Corrections
(DOC). The district court concluded that
Johnson had not exhausted his
administrative remedies pursuant to 42
U.S.C. sec. 1997e(a) and dismissed the
complaint without prejudice. We affirm.

  Johnson, an inmate in the Wisconsin
prison system, won a lawsuit against the
DOC's director of health services for
unreasonably refusing to authorize a
liver transplant for Johnson. After his
success, Johnson was harassed repeatedly
by DOC officials./1 Correctional
officers were hostile toward Johnson and
dramatically increased the number of
conduct reports issued against him. The
large number of reports ultimately
resulted in Johnson's transfer to a
maximum security prison. Johnson filed a
complaint charging the defendants with
retaliating against him for exercising
his First Amendment right to bring a suit
related to his confinement. Johnson
sought compensatory damages and a

preliminary injunction prohibiting DOC from transferring him to the maximum security prison. The district court denied Johnson's motion for an injunction and--concluding that Johnson had not exhausted his administrative remedies-- dismissed Johnson's action without prejudice.

I.

In the Prison Litigation Reform Act of 1995, 110 Stat. 1321 (1996) (PLRA), Congress imposed an exhaustion requirement on suits by prison inmates. Thus, 42 U.S.C. sec. 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Johnson argues that his action is not subject to the exhaustion requirement of sec. 1997e(a) because it is not an action "with respect to prison conditions." Prior to our decision in Smith v. Zachary, 2001 WL 723010 (7th Cir. June 28, 2001), there was room for this argument. But there is no longer.

Courts have divided sharply on the issue whether the term "prison conditions" incorporates discrete tortious acts like harassment, beatings and other kinds of excessive force. The Third and Sixth Circuits have concluded that excessive force and assault claims are subject to sec. 1997e(a)'s exhaustion requirement. See Booth v. Churner, 206 F.3d 289, 293-98 (3d Cir. 2000),/2 aff'd on other grounds, 121 S.Ct. 1819 (2001); Freeman v. Francis, 196 F.3d 641, 643-44 (6th Cir. 1999). The Second Circuit has held to the contrary. See Nussle v. Willette, 224 F.3d 95, 100 (2d Cir. 2000), cert. granted sub nom. Porter v. Nussle, 121 S.Ct. 2213 (2001). Our court recently came down on the inclusive side of the debate, ruling that "prison conditions" does indeed include beatings by prison guards. In Smith, a prison inmate had filed a suit for allegedly being beaten by prison guards in retaliation for participating in a prison riot. He failed to exhaust the administrative review process prescribed for the complained-of action, but argued that the sec. 1997e(a) exhaustion requirement does not apply to

beatings by prison guards because, inter alia, beatings are not "prison conditions." This court found his argument unpersuasive, and ultimately concluded that "[i]n the context of prisons, harassment from correctional officers or government officials is not equivalent to an unsolicited attack on the street; rather, the harassment is made possible by the correctional environment. Thus, a remedy lies in addressing prison conditions that facilities [sic] or tolerates aberrant behavior by guards." Smith, 2001 WL 723010 at *2. Therefore, we reasoned, isolated incidents of harassment or of assault by prison officials are "prison conditions" within the meaning of the PLRA exhaustion requirement. This is, of course, binding precedent.

Although Johnson's claims are slightly different from a claim of assault or excessive force (because he alleges retaliation of a different sort for the exercise of his First Amendment rights) the reasoning of Smith still applies. Acts of individual prison officials outside the scope of official prison policy, whether governed by the Eighth Amendment or the First, are within the realm of "harassment made possible by the correctional environment," and thus subject to the exhaustion requirement. See id. The Supreme Court in its forthcoming review of the Second Circuit's Nussle decision may resolve the debate among the circuits on what has been a hotly contested issue, but for now, in this circuit, Smith is definitive. Thus, Johnson's complaints must be deemed allegations about "prison conditions" within the meaning of the PLRA.

II.

Johnson makes the further argument that the exhaustion requirement does not apply to him because no administrative remedy is available. For the exhaustion requirement to apply, there must be some administrative remedy to exhaust. See Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 537 (7th Cir. 1999). Johnson argues that no remedy is open to him because the DOC's administrative remedy program--the Inmate Complaint Review System (ICRS)--does not address claims of the nature of this one.

Wisconsin Administrative Code sec. 310.08, which defines the scope of the ICRS, provides that inmates may bring complaints "to raise significant issues regarding rules, living conditions, and staff actions affecting institution environment . . . ." sec. 310.08(2) (emphasis added). Section 310.08 outlines various exceptions for which the ICRS is not available, including challenges to a "program review committee's decision" and "[t]he subject matter of a conduct report . . . ." sec. 310.08(2)(a) & (b)./3 Johnson first argues that he could not bring his complaint under sec. 310.08 because the portion of the explanatory appendix relevant to this subsection limits this remedy to challenges of "institutional polic[ies] or practice[s]." sec. 310 App., at n.310.08. The defendants counter that sec. 310.08 is not intended to be exhaustive; it simply provides guidance as to the types of challenges that are covered by the ICRS.

The note to sec. 310.08 in the appendix in some respects tends to support Johnson's argument, since neither he nor the defendants argue that it is the DOC's institutional policy or practice to retaliate against prison inmates for the exercise of their First Amendment rights. However, the language of the appendix note does not indicate that the ICRS system is limited to addressing institutional policies and practices; in fact, the note states that "[t]he scope of the grievance system is wide." Id. Further, it is apparent that claims challenging conditions other than institutional policies are eligible for the grievance system. See Davis v. Woehrer, 32 F.Supp.2d 1078 (E.D. Wis. 1999), appeal dismissed, 227 F.3d 759 (7th Cir. 2000). In Davis, a prisoner filed a civil rights complaint charging that the defendants had violated his Eighth Amendment right to be free from cruel and unusual punishment by ordering him to operate a meat slicer without appropriate training. Id. at 1078. The district court ruled in favor of the inmate, but on the grounds that the ICRS could not provide monetary relief to prisoners and that was the only relief the prisoner was seeking./4 But the court did not question whether there was any sec. 310.08 administrative remedy

available to the inmate under the ICRS; that appeared to be a given. And the complaint in that case arguably cannot be called a challenge to an "institutional policy or practice,"/5 the limitation Johnson alleges exists in the ICRS system.

And in Moore v. Stahowiak, 212 Wis.2d 744, 569 N.W.2d 711 (Ct. App. 1997), the court dismissed an inmate's petition for a writ of mandamus against a prison record custo-dian demanding a copy of a prison policy on the grounds that he failed to exhaust his administrative remedies. The court concluded that sec. 310.08 provided an administrative remedy. Thus, it necessarily concluded that sec. 310.08 was available for grievances that do not address "institutional policies and practices," because a writ of mandamus challenges the failure to comply with a policy--not the policy itself. Johnson has failed to adequately counter the assumptions that arise from the plain language of the statute, as well as the conclusions reached in Davis and Moore.

Johnson also argues that his appeal of the transfer to the maximum security prison has no available administra-tive remedy. He argues that 1) Wis. Adm. Code sec. DOC 302.19(9), which provides for appeals of decisions respecting "program assignments," does not apply to prison transfers, and 2) Wis. Adm. Code sec. DOC 302.20, which governs inter-prison transfers, contains no appeal provision. It is probably true that Johnson cannot use these avenues to appeal the prison transfer decision, but we need not explore the point. He does not tell us why prison transfers cannot be within the scope of sec. 310.08. We see no reason why they cannot. Further, if for some reason they are not within the scope of sec. 310.08, the Supreme Court's recent decision in Booth v. Churner indicates that a prison grievance system's inability to prevent a prison transfer does not obviate the need for exhaustion. See 121 S.Ct. 1819, 1821, 1825 (2001) (holding that prisoners must exhaust administrative remedies, even when the particular remedy sought cannot be obtained through the prison grievance system). Because Johnson's challenge to the prison transfer is part of his claim of retaliatory conduct and because that claim has an available administrative

vehicle for redress, we cannot excuse him from the exhaustion requirement.

If the ICRS system should fail to address Johnson's claim, that will constitute exhaustion, and he may then bring his claim to federal court.

III.

The defendants argue that Johnson is limited to habeas corpus relief on this claim. In Heck v. Humphrey, the Supreme Court ruled that a prisoner is barred from pursuing a sec. 1983 claim when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. 477, 487 (1994). This includes challenges to the fact or duration of confinement. See id. at 481-82. In Edwards v. Balisok, the Court extended this holding to prison disciplinary proceedings, holding that a prisoner was barred from bringing a sec. 1983 suit that would nec-essarily imply the invalidity of a loss of good time credits. 520 U.S. 641, 646 (1997). Johnson adequately distinguishes those cases, along with our decision in Evans v. McBride, 94 F.3d 1062 (7th Cir. 1996), on the grounds that they all involved direct challenges to convictions or disciplinary findings, while his claim involves a challenge to a course of retaliatory conduct, only part of which involved disciplinary action. Particularly supportive of Johnson's claim is our decision in DeWalt v. Carter, 224 F.3d 607 (7th Cir. 2000), in which we said that Heck and Edwards do not bar prisoners' sec. 1983 claims unless they are, in effect, challenges to the fact or duration of the prisoner's confinement.

The defendants contend that Johnson in this claim is necessarily challenging the validity of at least some of his conduct reports. The defendants distinguish DeWalt on two bases: 1) that here, Johnson is in fact challenging the duration of his confinement and 2) that here, unlike in DeWalt, Johnson would be able to challenge the retaliatory actions through a petition for habeas corpus. But the only challenge to the duration of Johnson's confinement that the defendants can actually identify here is one item from Johnson's original complaint in the district court: "In addition, the

penalties tied to the increase in conduct reports has caused plaintiff to lose 'good time' and has therefore extended the date for his mandatory release." But this is not the crux of Johnson's complaint; rather, the complaint states that "he has received penalties greatly in excess of those imposed on similarly situated inmates" and as a result has been ordered to serve more than 260 days in segregation, and to be scheduled to be transferred to a maximum-security prison. Finding for Johnson would not "necessarily imply the invalidity of his conviction or sentence," see Heck, 512 U.S. at 487; nor would it necessarily imply the invalidity of the conduct reports, see Edwards, 520 U.S. at 646-47. It also would not necessarily result in a revocation of his conduct reports or a restoration of the lost good time. Johnson's claims challenge much more than the fact that the conduct reports were undeserved; he is also arguing that they are excessive in number. It is the act of discipline that constitutes the retaliatory conduct--a separate issue from whether Johnson was, in fact, guilty of the conduct alleged in the reports. Johnson seeks monetary damages and an injunction preventing his transfer to a maximum security prison, not a reduction in his sentence.

Further, it appears that habeas relief would not be available to Johnson in a challenge to the prison transfer. Pischke v. Litscher holds that habeas corpus could not be used to challenge a transfer between prisons "unless the custody in which the transferred prisoner will find himself when transferred is so much more restrictive than his former custody that the transfer can fairly be said to have brought about what in Graham we called 'a quantum change in the level of custody.'" 178 F.3d 497, 499 (7th Cir. 1999) (quoting Graham v. Broglin, 922 F.2d 379, 381 (7th Cir. 1991) (defining "quantum change" as "outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation")). We have seen nothing to indicate that the transfer to maximum security in this case represents such a quantum change. But perhaps it is a close enough question that, were it really

before us, we would have to remand for further development of the record. That we need not do, however, because we conclude that Heck and Edwards do not apply to Johnson's claim.

## IV.

For the foregoing reasons, the judgment of the district court is Affirmed.

FOOTNOTES

/1 We are viewing the facts in the light most favorable to Johnson. See Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Med. Sch., 167 F.3d 1170, 1173 (7th Cir. 1999).

/2 In dissenting from the Third Circuit panel, Senior Circuit Judge John Noonan of the Ninth Circuit, sitting by designation, protested that, "A punch in the jaw in prison is not 'prison conditions.' A punch in the jaw is an act . . . . That Churner's alleged blow took place in a prison does not make it 'prison conditions.'" 206 F.3d at 301 (Noonan, J. dissenting).

/3 The ICRS also permits prisoners to file civil rights complaints in the ICRS. But, as the government concedes, this avenue is unavailable to Johnson. See Wis. Adm. Code sec. 310.08(7). "[C]ivil rights complaints" is defined as complaints in which an inmate "alleges discrimination on the basis of race, creed, ethnicity, national origin, sex, handicap, age, religion, color, ancestry, sexual orientation or marital status." Wis. Adm. Code sec. 310.03(7). Johnson does not bring a discrimination claim.

/4 The Supreme Court has recently rejected this approach, holding that prisoners seeking only monetary relief still must exhaust administrative remedies that do not provide such relief. Booth v. Churner, 121 S.Ct. 1819, 1821, 1825 (2001).

/5 Whether it was an official prison policy to order inmates to operate meat slicers without appropriate training is unclear from the opinion in that case. However, we think it likely that this was not an official policy, and that this challenge would likely not be classified as a challenge to an "institutional policy or practice."