LaFauci v. NH Dept. of Corrections    CV-99-253-M    10/31/01
UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Anthony LaFauci,
    Plaintiff

    v.                                    Civil No. 99-253-M
                                          Opinion No. 2001 DNH 204
New Hampshire Department
of Corrections, et al.,
    Defendants


**O R D E R**


Anthony LaFauci is a New Hampshire state inmate, formerly housed at the New Hampshire State Prison ("NHSP"). He has, however, been transferred out of the State and it appears that he is currently being detained at a correctional facility in Cheshire, Connecticut (having been transferred there from a correctional facility in Massachusetts). In this proceeding, he seeks damages from numerous defendants for alleged violations of his Eighth Amendment rights and various state common law torts – all allegedly committed during his incarceration at NHSP.

Most of LaFauci's claims against the majority of the named defendants have already been dismissed for failure to state a claim. What remains is a single Eighth Amendment claim against defendants Kenneth Gorski, Lee Morrison, Bert Morrison, A.J. Williams, Walter Davies, and Charles Ward, as well as a common law claim for assault and battery arising out of some of the same events giving rise to the Eighth Amendment claim. Specifically, LaFauci says that on January 9, 1998, while being transported from one tier to another, a correctional officer intentionally stepped on the heel of his sneaker, causing him to fall forward and injure his mouth, teeth, knee, foot, and both hips. Plaintiff's Motion to this Court's Attention (document no. 61) ("Plaintiff's Memorandum") at para. 95. Later, he was transported to another cell where he claims one of the correctional officers "dumped plaintiff out of [his] wheel chair onto the concrete floor, causing and inflicting pain." Id., at para. 99. In the days following that incident, LaFauci claims to have received sub-standard medical attention and says he was

improperly subjected to "medical lay-in," a status that required him to remain in his cell.

Thus, the events pertinent to this proceeding all necessarily occurred between January 9 (the date on which LaFauci claims to have been injured) and January 21, 1998 (the date on which he was transferred to a correctional facility in Massachusetts). See Report and Recommendation (document no. 10) at 7. See also Complaint at 14. By order dated June 5, 2001, the court denied, without prejudice, defendants' motion for summary judgment, noting that:

> The record presently before the court is silent as to LaFauci's compliance with the administrative exhaustion requirement of 42 U.S.C. § 1997e(a), thereby suggesting that his complaint must be dismissed, without prejudice, pending such exhaustion. As noted above, however, the court has afforded both LaFauci and the State until August 3, 2001, to brief this issue. If LaFauci claims to have exhausted available administrative processes, his memorandum shall include references to and copies of all documentation supporting that claim.

LaFauci v. N.H. Dept. of Corrections, No. 99-253-M, 2001 DNH 108 (D.N.H. June 5, 2001) (emphasis supplied). The parties have submitted their briefs on the exhaustion issue, and defendants move to dismiss LaFauci's claims, without prejudice, for failure to exhaust available administrative remedies. LaFauci, on the other hand, says he adequately exhausted and objects to dismissal of his remaining claims.

**Discussion**

I.   Administrative Exhaustion and Excessive Force Claims.

42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act of 1995 ("PLRA"), provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (Supp. 2000) (emphasis supplied). The Supreme Court has held that section 1997(e) requires an inmate to exhaust all available administrative processes before filing a

4

federal suit relating to the conditions of his or her confinement, even if the inmate seeks, but cannot obtain through the administrative process, monetary relief. Booth v. Churner, 121 S.Ct. 1819, 1821 (2001) ("The question is whether an inmate seeking only monetary damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money. We hold that he must."). In light of that holding, the Court affirmed the lower court's dismissal, without prejudice, of Booth's Eighth Amendment claims for failure to exhaust.

Although the Supreme Court implicitly concluded that Booth's Eighth Amendment claims (e.g., assault and deliberate indifference to medical needs) related to "prison conditions" and, therefore, were subject to the PLRA's exhaustion requirement, there appears to be some debate in various circuits (much, though not all, of it preceding the Booth opinion) as to whether such claims are properly viewed as falling within the scope of the PLRA's exhaustion requirement. Compare Smith v.

5

Zachary, 255 F.3d 446 (7th Cir. 2001) (concluding that inmate's Eighth Amendment claim stemming from alleged beating by guards was subject to PLRA exhaustion requirement) with Nussle v. Willette, 224 F.3d 95 (2d Cir. 2000) (concluding that PLRA exhaustion requirement does not apply to inmate's claims of assault and excessive force, since such claims do not relate to "prison conditions"), cert. granted, 121 S.Ct. 2213 (2001).

Having granted certiorari in Nussle, it would appear that the Supreme Court intends to resolve any lingering confusion on this issue. In the interim, however, this court agrees with the majority of courts that have addressed the question and concludes that Eighth Amendment claims of excessive force relate to "prison conditions" and, therefore, are subject to the PLRA's exhaustion requirement. See generally Smith, 255 F.3d at 448-52; Higginbottom v. Carter, 223 F.3d 1259, 1260-61 (11th Cir. 2000); Freeman v. Francis, 196 F.3d 641, 643-44 (6th Cir. 1999); Freytes v. LaBoy, 143 F. Supp. 2d 187 (D.P.R. 2001); Moore v. Smith, 18 F. Supp. 2d 1360, 1363 (N.D.Ga. 1998). Accordingly,

6

before he may pursue his Eighth Amendment claims in this forum, LaFauci must demonstrate that he exhausted available prison administrative remedies relating to those claims.

II.  The Administrative Grievance Scheme.

The New Hampshire Department of Corrections has adopted an administrative scheme through which inmates may seek to have various complaints addressed and resolved.  The process is explained in the "Manual for Guidance of Inmates," a copy of which is provided to all inmates upon their arrival at the correctional facility.  It is also outlined in the New Hampshire Department of Corrections Policy and Procedure Directive ("PPD") 1.16, entitled "Complaints and Grievances by Persons under DOC Supervision," another publication widely available to inmates. See generally Exhibit 1 to Defendants' Memorandum (document no. 66), Affidavit of Warden Bruce Cattell and attachments thereto.

At the lowest level of the administrative process, inmates are instructed to resolve their complaints orally if possible.

7

If that proves unsuccessful, they may file a written complaint or request for information, known as an "inmate request slip." Typically, both oral and written requests and/or complaints must follow the "chain of command." Accordingly, inmates are instructed to address their requests to the correctional officer of lowest rank whom they believe can resolve the issue.[1]

When an inmate request slip is received, one of three outcomes will follow: (1) the prison staff member who is allegedly the source of the problem or who possesses information the inmate seeks will respond to the inmate directly; or (2) that staff member's supervisor will investigate the matter; or (3) a formal investigation will be initiated. See Exhibit 2 to

---

[1] There is an exception to the "chain of command" rule when the inmate believes that he or she is subject to imminent injury or harm. Under those circumstances, the inmate may directly address the Warden or the Commissioner of Corrections, even if the inmate has not previously filed an inmate request slip. See Inmate Manual, section D(3). In the days and weeks following the events at issue in this case, LaFauci never sought to avail himself of that exception. And, because he is no longer incarcerated at the NHSP, he cannot be subject to imminent harm or injury at the hands of any NHSP inmate or employee and, therefore, the exception plainly does not apply.

defendants' memorandum, affidavit of Warden Jane Coplan, at para. 22. In the majority of cases involving allegations of inappropriate conduct by correctional officers (e.g., unprofessional or demeaning language), a written request or complaint is sent to the staff member's supervisor. The person who is the subject of the complaint is interviewed, as are other staff members and any inmates who might have witnessed the complained-of conduct. A brief summary of the investigation is then presented to the Warden. In circumstances involving more serious charges - claims of excessive force, for example - the investigation takes on greater formality, and more witnesses may be interviewed. Again, the results of the investigation are presented to the Warden.

When an investigation is complete, the inmate receives a written response to his request. Any discipline that is imposed on correctional facility staff (e.g., oral reprimand, written reprimand, order to undergo counseling, discharge, etc.) is, however, kept confidential. Of course, if a staff member is

transferred or terminated, his or her absence would likely be noticed by the complaining inmate, who might reasonably infer that the staff member had been disciplined.

An inmate who is not satisfied with a response to his or her request slip may pursue further administrative remedies and appeal to the Warden, by submitting an inmate "grievance form." Under the administrative scheme, the Warden is afforded 15 days within which to answer the inmate's grievance with either an interim or final response. If the inmate is dissatisfied with the Warden's response, he or she may appeal the matter to the Commissioner of Corrections. The Commissioner is allowed 20 days within which to provide an interim or final response. The ultimate decision of the Commissioner is final. See Exhibit A to Cattell affidavit, Inmate Manual, section D; Exhibit B to Cattell affidavit, PPD 1.16, at 3-4. At that point, the inmate has fully exhausted his or her administrative remedies.

III. LaFauci's Efforts to Exhaust Administrative Remedies.

Plaintiff's memorandum in response to the court's recent order is a lengthy chronicle of countless unpleasant confrontations he claims to have had with correctional officers dating back as far as April of 1995. Most of those details are, however, irrelevant in this proceeding; as noted above, the only events at issue here are those that transpired between January 9 (the date on which LaFauci fell and sustained injuries) and January 21, 1998 (the date on which he was transferred to a correctional facility in Massachusetts). And, as noted in the court's prior order, the pertinent inquiry at this stage of the litigation is limited to whether LaFauci exhausted available administrative remedies with regard to his complaints arising out of those particular events.

As to the events that occurred within the relevant time frame, the record reveals that on January 9, 1998, LaFauci filed an inmate request slip, in which he complained about correctional officers having replaced his sneakers with new, ill-fitting ones.

11

See Exhibit TP-11 attached to plaintiff's memorandum.  LaFauci's unit manager responded, explaining why his personal sneakers had been replaced with those issued by the Department of Corrections. LaFauci did not pursue any appeal.  That is to say, he did not file an inmate grievance form, nor did he avail himself of any other administrative remedy provided under the Inmate Manual (e.g., an effort to seek monetary compensation for the confiscated sneakers), nor did he appeal any adverse decision(s) to the Commissioner of Corrections.

On January 14th, LaFauci submitted an inmate request slip to Dr. Ward, complaining about Dr. Ward's decision to order medical lay-in and notifying Dr. Ward that he had been named as a defendant in one of LaFauci's many civil lawsuits.  Dr. Ward responded by explaining that, "You have been given medical lay-in because your behavior is so unpredictable.  Your crutches, which could be used as weapons, are an additional factor.  We are trying to protect you and others from harm."  Exhibit N-20. LaFauci did not pursue any appeal.

Also on January 14th, LaFauci filed an inmate request slip in which he complained to his unit manager that he had been harassed by correctional officer Williams. The unit manager investigated LaFauci's claim and, among other things, interviewed Williams. He then informed LaFauci that Williams denied having engaged in any harassing behavior but told LaFauci that, as a precaution, all future interactions with him would be video taped. Exhibit TP-9. Again, LaFauci did not pursue any appeal. The following day, LaFauci submitted an inmate request slip to Dr. Hill, complaining of pain and swelling in his knee. Dr. Hill responded by encouraging LaFauci to go to sick call. Exhibit N-20. LaFauci did not pursue any appeal. On January 18th, LaFauci directed another inmate request slip to Dr. Ward, complaining about his continued medical lay-in status. Dr. Ward responded by informing LaFauci, "As long as you need crutches we will continue your medical lay in for your safety and the safety of others. I will keep in touch with the SHU staff about your meds. Please

13

inform the nurses about your medical problems." Exhibit N-20.[2] LaFauci did not pursue any appeal.

Finally, on January 21st, LaFauci directed an inmate request slip to Dr. Sidley, complaining of pain in his knee, requesting an MRI, and notifying Dr. Sidley that "I will be going to court soon." Dr. Sidley responded by telling LaFauci, "I'm sorry that you feel that you must go to court. In any case, I am convinced that you have been receiving proper treatment." Exhibit N-22. LaFauci did not pursue any appeal.

LaFauci has not submitted to the court (nor has he even made reference to) any documentation demonstrating that he pursued his administrative remedies relating to the events in question beyond

_____

[2] The reference to "SHU" in Dr. Ward's response is a short-hand name for the "Secure Housing Unit," the most secure unit at the New Hampshire State Prison. Although it is unclear why he was held there, LaFauci appears to have been housed in SHU at all times relevant to this proceeding. Consequently, he was subjected to greater supervision and constraints on his movement than were the inmates in general population and concerns that he (or others) might use his crutches as weapons were likely heightened.

simply filing an inmate request slip; there is, for example, nothing in the record showing that he ever filed an inmate grievance slip with the Warden as to any of those events.  See Exhibit 3-B to defendants' memorandum.  His most recent efforts to exhaust, undertaken in August, 2001 (i.e., more than three and one-half years after the events at issue occurred), were insufficient and his "Grievance to Exhaust Administrative Remedies," Exhibit 3-C to defendants' memorandum (the "omnibus grievance"), suffers from several deficiencies.

First, although LaFauci's omnibus grievance does reference his complaint about the removal of his personal sneakers, it does not appear to address all of the specific incidents at issue in this case.  Instead, it simply recites a series of alleged wrongs to which he says he was subjected (without providing any dates) and focuses largely on his claim that his transfer out of New Hampshire was retaliatory (a claim not at issue in this case).  Second, even if it had addressed the events relevant to this proceeding in detail sufficient to permit a meaningful

15

investigation, LaFauci's grievance form was returned to him by legal counsel to the Department of Corrections as having been improperly filed and incomplete. See Exhibit 3-D to defendants' memorandum. Specifically, LaFauci was reminded that inmates must use request slips to resolve any disputes and must demonstrate that such efforts were unsuccessful before submitting grievances. His omnibus grievance failed to make such a showing. And, parenthetically, the court notes that LaFauci's failure to pursue any of his requests or complaints beyond the "request slip" stage suggests that each was answered or resolved to his satisfaction (at least at that time). LaFauci was also reminded that, before appealing to the Commissioner, an inmate must first bring his or her complaint(s) to the attention of the Warden. Again, his omnibus grievance form contains no evidence that he ever brought any of his concerns to the attention of the Warden.

LaFauci was told how to correct the deficiencies in his omnibus grievance and was also provided with a claim form, so that he might seek compensation for the sneakers that were taken

16

from him.  Nothing in the record suggests that LaFauci attempted to address those identified deficiencies or that he submitted a properly completed grievance form to the Warden relating to the events at issue in this case.  Consequently, his facially deficient effort to circumvent one step in the administrative process (i.e., appealing directly to the Commissioner prior to filing an interim appeal with the Warden) cannot be viewed as evidence that LaFauci properly exhausted his administrative remedies.

**Conclusion**

The materials submitted by LaFauci (as supplemented by the State) reveal that as to each complaint he had within the relevant time frame, he filed an inmate request slip, an employee of the Department of Corrections responded, and LaFauci did not pursue the matter any further - he neither filed an inmate grievance slip, nor did he otherwise attempt to bring the matter(s) directly to the attention of the Warden or, if dissatisfied with the Warden's response, to the Commissioner.

17

His recent efforts to exhaust by filing his "Grievance to Exhaust Administrative Remedies" were deficient; his submission was not properly filed and, therefore, was returned to him without further action.

Consequently, on the current record, the court cannot conclude that LaFauci exhausted his administrative remedies with regard to the incidents that are the subject of this litigation. His complaint is, therefore, dismissed without prejudice, see Booth v. Churner, 121 S.Ct. 1819 (2001), and the Clerk of the Court shall close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 31, 2001

cc:  Anthony LaFauci, pro se
     Mary E. Schwarzer, Esq.

18